896 P.2d 350

**STATE of Idaho, Plaintiff–Respondent,**

v.

**William L. BRYANT, Defendant– Appellant.**

No. 21176.

Court of Appeals of Idaho.

May 11, 1995.

Rehearing Denied June 15, 1995.

· Petition for Review Denied June 28, 1995.

John A. Bradley, Burley, for appellant.

Alan G. Lance, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, and Catherine L. Derden, Little Rock, AR, argued for respondent.

PERRY, Judge

William Bryant appeals from his judgments of conviction and the sentences he received after a jury found him guilty of aggravated assault, I.C. § 18–905(a); robbery, I.C. § 18–6501; kidnapping, I.C. § 18–4502; rape, I.C. § 18–6101(4); and infamous crime against nature, I.C. § 18–6605. Bryant contends that he was deprived of a fair trial by the district court's denial of his motion to change venue due to pretrial publicity and by the prosecution's failure to preserve exculpatory evidence. Bryant asserts a double jeopardy violation with respect to his conviction for aggravated assault. Bryant also alleges that the district court abused its discretion in sentencing. We va-

cate the conviction and sentence for the crime of aggravated assault which we conclude was an included offense of the kidnapping as charged. In all other respects, we affirm the district court.

## FACTS

The charges against Bryant stemmed from an incident which took place in the early morning hours of February 4, 1993, near Declo, Idaho. The facts of the incident, as related in Bryant's testimony, differed significantly from the victim's (CT's) account with regard to who had initiated the contact and whether the sexual encounter between them had been consensual. At trial before a jury, Bryant claimed that he had parked his truck off the road and was working on it when CT pulled up next to him. Bryant testified that CT suggested that he get in her van to warm up. Bryant asserted that CT invited him to have sex and drove to find a better location.

According to CT's testimony, she was returning home after dropping her husband off at work. As she crossed Donner Bridge, CT noticed a truck behind her. The truck passed her in the drifting snow, then quickly stopped, forcing her to brake to avoid hitting the rear of the truck. CT testified that Bryant got out of the truck, approached her van, opened the door and forced his way into the van at gunpoint.

CT recounted that Bryant took her keys and briefly returned to his truck. CT then claimed that Bryant drove her van to the Raft River area where he forced her to perform fellatio, raped her and robbed her. At some point, the gun was fired in the van and a bullet was found embedded in one of the van's armrests. Bryant asserted that the gun was discharged while he was trying to take the gun away from CT, who was handling it. Bryant did not testify that CT tried to defend herself with the gun, but that she had picked it up to look at when it was no longer tucked into the waist of Bryant's jeans. CT testified that she had never touched the gun.

After an eight-day trial, the jury found Bryant guilty of aggravated assault, robbery, kidnapping, rape and infamous crime against nature. Bryant received the following sentences, all of which included an enhancement for use of a firearm under I.C. § 19–2520: eight to ten years for aggravated assault; eight to eighteen years for robbery; twenty to thirty years for kidnapping in the first degree; twenty to thirty years for rape; and five years fixed for infamous crime against nature.

## ANALYSIS

### 1. MOTION TO CHANGE VENUE

■ On appeal, Bryant first challenges the district court's denial of his motion for change of venue. Bryant asserts that he was prejudiced by pretrial publicity, including "the publicity that might have been made in the victim's church." Bryant argues that because CT is widely known in the small county and is a member of the predominant religion in the county, of which Bryant is not a part, the district court should have granted a change of venue to assure Bryant a fair trial before an impartial jury.

Where it appears that the defendant actually received a fair trial and that there was no difficulty experienced in selecting a jury, the trial judge's refusal to grant a change of venue is not a ground for reversal. *State v. Brooks*, 103 Idaho 892, 896, 655 P.2d 99, 103 (Ct.App.1982), *citing State v. Needs*, 99 Idaho 883, 890, 591 P.2d 130, 137 (1979). In evaluating whether the trial court properly exercised its discretion in deciding to grant or deny a motion for change of venue, we consider the following:

> [A]ffidavits indicating prejudice or an absence of prejudice in the community where the defendant was tried, testimony of the jurors at voir dire as to whether they had formed an opinion of the defendant's guilt or innocence based upon adverse pretrial publicity, whether the defendant challenged for cause any of the jurors finally selected, the nature and content of the pretrial publicity, and the amount of time elapsed from the time of the pretrial publicity to the trial itself. Publicity by itself does not require a change of venue.

*State v. Needs*, 99 Idaho at 890, 591 P.2d at 137. Keeping these considerations in mind, we examine Bryant's venue challenge.

Bryant sought to have venue changed from Cassia County after he received the state's supplemental response to discovery. The response identified 229 potential character witnesses who would testify that they knew CT and would vouch for her good character and reputation. In support of the motion, Bryant's trial counsel submitted an affidavit indicating that the list of character witnesses included a factual witness and one of the investigating officers. Trial counsel's affidavit further stated his belief that Bryant could not receive a fair trial where such a large number of people in the county's small geographical area were personally acquainted with the victim.

In support of the motion to change venue, Bryant cited *State v. James*, 767 P.2d 549 (Utah 1989). In denying the motion, the district court distinguished *James* wherein the extensive pretrial publicity had moved the entire community to become involved with the search of a missing child. The district court held that the publicity in Bryant's case was limited to a news release and a composite picture that had not been disseminated county-wide. The district court rejected Bryant's assertion that he would suffer from a religious bias because of a lack of evidence of any such bias. Additionally, the district court indicated that the prejudice asserted by Bryant in his motion would be better assessed after voir dire, at which time Bryant could renew his motion.

The record reflects that a larger than usual jury pool was called in this case and that none of the state's 229 potential witnesses were among the jury pool members. After review of the written answers to questionnaires completed by the jury pool members, counsel stipulated to the removal of six potential jurors. The district court conducted two days of voir dire and allowed counsel an opportunity to voir dire as well. The district court excused three potential jurors for cause, but denied defense counsel's request to strike four other potential jurors for cause.

Of those jurors challenged for cause, not one was objectionable because of an opinion formed as a result of pretrial publicity. One juror was excused because of his relationship with a local law enforcement officer, who had talked briefly about the case, although was not assigned to the case. At the end of voir dire, Bryant's counsel renewed the change of venue motion and refocused his argument. Trial counsel no longer relied on the negative impact of pretrial publicity. Counsel focused on the large number of persons called for jury duty who knew CT and who might, therefore, be predisposed to favor CT's testimony over Bryant's. The district court affirmed its denial of the motion.

According to the record, the district court had not questioned all of the available jury pool members when the jury was selected. After exercising his peremptory challenges, defense counsel voiced no further objection to the jury as seated. Therefore, it does not appear from the record before us that there was any difficulty in selecting a jury as Bryant's motion for change of venue alleged. Moreover, the record does not contain copies of the articles from the news releases or the composite, so that we can evaluate their prejudicial impact. Applying the criteria of *Needs*, we conclude that the district court did not err in denying Bryant's motion for change of venue.

## 2. FAILURE TO PRESERVE EVIDENCE

■ Next, Bryant asserts that the district court should have dismissed the charges against him because the state failed to preserve evidence. Bryant specifically contends that, although the state elected not to test Bryant's gun for fingerprints, the state's mishandling of the gun effectively deprived Bryant of any opportunity to have CT's fingerprints lifted from the gun so as to impeach CT's credibility.

■ A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984), *citing Brady v. Maryland*, 373 U.S. 83, 87,

83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). In Idaho, the duty of the prosecution to disclose evidence necessarily includes the duty to use earnest efforts to preserve evidence for possible use by a defendant. *State v. Wells,* 103 Idaho 137, 139, 645 P.2d 371, 373 (Ct.App.1982), *citing State v. Smoot,* 99 Idaho 855, 860, 590 P.2d 1001, 1006 (1978); *State v. Ward,* 98 Idaho 571, 573, 569 P.2d 916, 918 (1977). The state does not, however, have a general duty to gather evidence for the accused. *State v. Reyna,* 92 Idaho 669, 448 P.2d 762 (1968); *State v. Sena,* 106 Idaho 25, 674 P.2d 454 (Ct.App.1983).

■ In cases where allegedly exculpatory evidence is lost or destroyed, we apply a three-part test to determine whether a defendant's due process rights have been violated by the loss or destruction of such evidence. We examine: (1) the materiality of the evidence; (2) the prejudice to the defense caused by the loss or destruction of the evidence; and (3) whether the government was acting in good faith when it destroyed or lost the evidence. *Paradis v. State,* 110 Idaho 534, 716 P.2d 1306 (1986). However, it has since been held that failure to preserve evidence which is only potentially useful to the defendant does not constitute a denial of due process unless a criminal defendant can show bad faith on the part of the police. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).

■ Thus, where the destroyed evidence is of unknown value, as it is in this case, "we apply *Youngblood* and restrict our inquiry to the existence of governmental bad faith." *Stuart v. State,* 127 Idaho 806, 816, 907 P.2d 783, 793 (S.Ct. No. 20060, slip op. February 21, 1995), *reh'g filed* March 13, 1995. Upon a finding of bad faith on the part of the government, the materiality of the evidence and the prejudice occasioned by its loss or destruction can be presumed. *Id.*

As noted, the record before us indicates that the police seized the gun as evidence because CT claimed that upon approaching her vehicle Bryant had threatened her with a gun and had also later discharged the gun in her van. The testimony of several of the officers involved in gathering evidence in Bryant's case revealed that the gun was han-

dled by a deputy prosecutor, who was at the police station when the bag containing the gun was opened. The gun was then taken away from the deputy prosecutor by Corporal Prescott and handed in turn to Sergeant Tracy and then to Lieutenant Smith.

From the chain of custody described above, any fingerprints belonging to CT which may have been on the gun were probably obscured by the later handling of the gun. It appears that the failure to preserve the integrity of the evidence was negligent and reflects a deviation from proper standards to be followed by the police. We cannot, however, conclude that there was bad faith in the state's handling of the gun. There is no showing in the record that the officers intentionally acted in disregard of Bryant's due process rights or to circumvent the requirement of disclosure of apparent exculpatory evidence. *See State v. Ames,* 109 Idaho 373, 375, 707 P.2d 484, 486 (Ct. App.1985). The record does not indicate any calculated police action to suppress exculpatory evidence, *see State v. Edwards,* 109 Idaho 501, 506, 708 P.2d 906, 911 (Ct.App.1985), or to deny Bryant the opportunity to request that fingerprint tests be done on the gun. Having found there was no showing of bad faith by the police in the handling of the gun, we hold that Bryant's due process rights were not violated. We affirm the district court's ruling denying Bryant's motion to dismiss.

## 3. DOUBLE JEOPARDY

■ Bryant contends that his conviction for aggravated assault is in error. He asserts that the crime of aggravated assault is a lesser included offense of the greater offenses of robbery, rape and kidnapping. As a result, therefore, he contends that his separate conviction for aggravated assault violates his federal and state constitutional protections against double jeopardy.

We begin by pointing out that the double jeopardy issue relating to the multiple convictions on a greater and a lesser offense does not appear to have been argued to the district court. The record on appeal contains no objection by Bryant to the charging infor-

mation with regard to the aggravated assault charge. He made no motion to the district court to dismiss the aggravated assault charge on double jeopardy grounds, and he did not present a defense based on double jeopardy. Bryant could have proposed a jury instruction on lesser included offenses to preserve the matter for appeal, but the record contains neither the proposed instructions nor those given to the jury. Bryant also failed to raise the issue at sentencing or through a post-trial motion.

The state, however, does not argue that the double jeopardy issue is being raised by Bryant for the first time on appeal. Therefore, we will assume that the defense of double jeopardy was timely raised. The question then becomes whether the statutes under which Bryant was charged were sufficiently distinguishable from each other to permit prosecution and conviction of each one separately based on the same series of events. *See State v. Adamson*, 140 Ariz. 198, 680 P.2d 1259 (App.1984). Bryant's claims that his constitutional protections against double jeopardy were violated are to be analyzed by applying the "same elements" test derived from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under *Blockburger*, the test to be applied to determine whether there are two offenses or only one is whether each offense requires proof of an additional fact which the other does not. *Id.; Matthews v. State*, 113 Idaho 83, 741 P.2d 370 (Ct.App.1987).

The prohibition against double jeopardy has been held to mean that a defendant may not be convicted of both a greater and a lesser included offense. *State v. McCormick*, 100 Idaho 111, 113, 594 P.2d 149, 152 (1979), *citing Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). Whether a particular crime is a lesser included offense of the crime charged involves a question of law over which we exercise free review. *State v. Croasdale*, 120 Idaho 18, 19, 813 P.2d 357, 358 (Ct.App.1991).

The test for determining whether one offense is a lesser included of another is the same regardless of whether the determination is being made to decide if a requested instruction is proper or whether the determi-nation is being made for the purpose of deciding if a defendant can be convicted of both offenses or only one under the double jeopardy clause. *State v. Thompson*, 101 Idaho 430, 435, 614 P.2d 970, 975 (1980). An included offense is one which is necessarily committed in the commission of another offense; or one whose essential elements are charged in the information as the manner or means by which the more serious offense was committed. *State v. Hall*, 86 Idaho 63, 383 P.2d 602 (1963); *see also State v. Anderson*, 82 Idaho 293, 301, 352 P.2d 972, 977 (1960). In other words, *Hall* indicates that "either the facts of the crime as committed, or the charge as contained in the information may be considered in determining whether or not the lesser included offense is 'necessarily included.'" *State v. Boyenger*, 95 Idaho 396, 401, 509 P.2d 1317 (1973). *See also Sivak v. State*, 112 Idaho 197, 211, 731 P.2d 192, 206 (Ct.App.1987) (whether a charged offense is a lesser included offense of another charged offense is analyzed in reference to the facts of each case).

Bryant was charged with aggravated assault in violation of I.C. § 18–905(a). The information specifically alleged that Bryant threatened CT with a 9mm pistol which created in CT a well-founded fear of imminent violence. Neither the information nor the state's presentation at trial attempted to distinguish between the initial threat with the gun when Bryant approached the door and the later firing of the gun in the van as the predicate for the aggravated assault. Therefore, the aggravated assault charge is based, at least in part, on Bryant's initial threatening conduct with the gun.

The allegations of the crime of kidnapping were that Bryant: "did wilfully seize and detain [CT] with the intent to commit rape, and an infamous crime against nature upon her." The specific intent language is derived from I.C. § 18–4502 and serves to raise the degree of kidnapping to first degree. In addition, the enhancement count related to the kidnapping charge alleged in pertinent part that Bryant: did willfully and unlawfully display, threaten and use a firearm, to wit, a pistol, in committing the crime of kidnapping.

We conclude, therefore, that there are common facts included in the allegations of the kidnapping charge and the allegations of the aggravated assault charge. The use of the pistol is recited in the elements of the aggravated assault and also appears in the kidnapping enhancement as charged, indicating that Bryant's threat with the pistol and the taking of CT's keys were the means by which the kidnapping was accomplished. We hold, therefore, that the aggravated assault charge is an included offense of kidnapping.

Because we hold that the aggravated assault charge is an included offense of the kidnapping charge, we vacate the separate conviction for aggravated assault. We need not address whether the aggravated assault charge is an included offense of the rape or the robbery. However, we note that the practical effect of this holding does not grant relief to Bryant or reduce his term of incarceration, whose parameters are defined by the longer, concurrent sentences imposed on the remaining charges.

## 4. EXCESSIVE SENTENCE

Bryant argues that his sentences are excessive, particularly because he has no criminal history. He asserts that his sentences do not reflect due consideration of his spotless record and his exemplary personal traits as recounted in numerous witness statements and testimony at the sentencing hearing. Bryant asserts that the district court abused its sentencing discretion in relying on Bryant's persistent and continuing refusal to admit responsibility for his crimes, which led the district court to conclude that Bryant was unrehabilitatable and thus deserving of a lengthy term of incarceration.

Bryant received five concurrent sentences, four of which included enhancements for the use of a firearm during the commission of the crimes. On the rape and kidnapping convictions, Bryant was sentenced to two unified terms of thirty years, with minimum periods of incarceration of twenty years, including separate enhancements of five years each. To establish that the sentence imposed was improper, Bryant must show that, in light of the governing criteria, the sentence was excessive under any reasonable view of the facts. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992), *quoting State v. Broadhead,* 120 Idaho 141, 143–45, 814 P.2d 401, 403–05 (1991). For purposes of our review, we look to the longest fixed period of confinement of Bryant's concurrent sentences, which in this case is twenty years. *See State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989).

A term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill,* 103 Idaho 565, 568–69, 650 P.2d 707, 710–11 (Ct. App.1982). In reviewing a sentence, we will not substitute our view for that of the sentencing judge where reasonable minds might differ. *Id.* at 568, 650 P.2d at 710.

In its comments at sentencing, the district court characterized Bryant's crimes as violent and degrading displays of power over the victim. The district court considered the heinous nature of the crimes, their randomness, and Bryant's use of a firearm in committing the crimes. The district court did not believe Bryant's version of the events, which it perceived to be a flagrant lie. Upon further consideration of Bryant's character, the district court found reasons to doubt that Bryant was the mild-mannered, non-violent person sitting before the court.

The district court evaluated the aggravating and mitigating factors in accordance with I.C. § 19–2520. In mitigation, the district court considered that Bryant was twenty-five years old, had received recognition for good service in the military and in his employment, and was viewed by his family and friends as a kind, caring individual. The district court acknowledged that these were Bryant's first offenses. From the psychological report prepared to aid in sentencing, the district court learned that Bryant did not suffer from any functional impairment. The report further indicated that Bryant exhibited characteristics associated with individuals who have underlying hostility but tend to

overcontrol that hostility and defend against aggressive impulses.

In fashioning the sentences, the district court gave due regard to the sentencing objectives set forth in *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1979). The district court did not abuse its discretion in imposing what can be viewed as severe sentences, even though the crimes appear to have been abnormal for Bryant, considering that he had no prior criminal history. Our conclusion, therefore, is that the district court acted within its sentencing discretion.

## CONCLUSION

In this case, the district court did not err in denying Bryant's motion for change of venue where a jury was ultimately seated to the satisfaction of both parties. Having determined that there was no bad faith attendant to the state's negligent handling of the gun, we conclude that Bryant's motion to dismiss for failure to preserve evidence was properly denied. Our consideration of the allegations found in the information in this case leads us to conclude that the aggravated assault charge was an included offense of the kidnapping charge filed against Bryant. Finally, we hold the sentences not to be excessive or outside of the district court's sentencing discretion.

We vacate the separate conviction and sentence for the aggravated assault charge. We affirm the judgments of conviction and the respective sentences for rape, robbery, kidnapping and infamous crime against nature.

LANSING, J., and SWANSTROM, J. Pro Tem., concur.