972 P.2d 737

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Charles A. PECOR, Defendant–Appellant.**

No. 22800

Court of Appeals of Idaho.

Dec. 30, 1998.

---

**14.** The maximum sentence for possession of methamphetamine is incarceration not to exceed seven years. I.C. § 37–2732(c)(1).

360

John J. Rose, Kellogg, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Chief Judge

Charles Alan Pecor appeals from a judgment of conviction for delivery of a controlled substance. He makes several challenges to the admission of evidence at trial, the conduct of the prosecutor, and the sufficiency of the evidence to support the conviction. We affirm.

## FACTS AND PROCEDURAL HISTORY

According to the State's evidence at trial, Pecor's conviction arose from the following events. On July 11, 1995, Pecor and Linda Singlestar told Rebecca Wilson that they were planning to drive to Coeur d'Alene to buy some methamphetamine. Wilson responded that some of her friends, including Georgia Haddock, were interested in obtaining that drug. About a week later, when Pecor returned with the drugs, Wilson put her friend, Haddock, in contact with Pecor. Pecor and Haddock agreed that the delivery would be made in the parking lot of a park on the night of July 19, 1995. Pecor drove to the park in Singlestar's car with Singlestar and another companion, Scott Cornell, as passengers. Pecor exited the car and walked to Haddock, who was waiting in her automobile. While Cornell and Singlestar stood nearby, Pecor handed Haddock a cigarette pack containing methamphetamine. Pecor explained that the amount was less than Haddock had asked for, and they agreed to go to Haddock's house to determine how much methamphetamine was in the cigarette package. As they left the park, Singlestar rode with Haddock while Pecor drove Singlestar's car, with Cornell as a passenger.

Meanwhile, the police had learned through an informant that a sale of illegal drugs would take place in the park that night. A short time after the cars left the park, the police stopped both vehicles. Haddock was arrested for driving under the influence of intoxicants. After her arrest, the police asked her whether there were drugs or weapons in her car, to which she responded that there was methamphetamine on the front seat. When the police asked her who had given her the drugs, she responded that Pecor and Cornell had brought the methamphetamine to the park and Pecor had handed the package to her. Pecor and Cornell were both arrested at the scene. Singlestar was not arrested or charged with any crime as a result of the transaction.

Pecor was charged with delivery of a controlled substance, I.C. § 37–2732, and was found guilty by a jury. He filed a motion for a new trial or for dismissal of the charge, but the district court denied the motion.

On appeal from the judgment of conviction, Pecor contends that: (1) the district court erred in admitting hearsay statements; (2) the district court erred in admitting a urinalysis showing the presence of methamphetamine in Pecor's urine the day after his arrest; (3) the district court erred in allowing the State's expert to testify that the substance delivered by Pecor was methamphetamine; (4) Pecor's due process rights were violated by the police officers' failure to arrest Singlestar and search her car; (5) the prosecutor violated Pecor's due process rights by entering into plea agreements with witnesses and by abusing the subpoena power; (6) the prosecutor's allegedly improper statements during opening statement and closing argument violated Pecor's right to a fair trial; and (7) there was no evidence corroborating the testimony of Pecor's co-conspirators and, thus, the evidence is insufficient to support the jury's finding of guilt.

## ANALYSIS

### A. Admission of Hearsay Statements

Pecor asserts that certain statements, which he contends were hearsay, were erroneously admitted at trial. He refers to out-of-court statements made by Cornell and

Haddock in which they told police officers that Pecor delivered the methamphetamine to Haddock.

The State responds that Pecor may not raise this issue on appeal because he did not object to the testimony he now challenges. The trial transcript reveals, however, that he did object to the testimony of Officer Gunderson regarding Haddock's out-of-court statement. Therefore, we will consider this claim of error. In the challenged testimony, Officer Gunderson related statements that Haddock made after her arrest. According to Gunderson, Haddock said that Pecor "handed her a baggie of crank at the park."

■ The trial court overruled Pecor's hearsay objection to the testimony without stating any reason for that ruling, and the State does not suggest any applicable hearsay exception in response to Pecor's claim of error. If, as Pecor asserts, the district court admitted the testimony under Idaho Rule of Evidence 801(d)(2)(E) as the statement of a co-conspirator, the ruling was erroneous. That rule provides that statements by a co-conspirator made *during the course of and in furtherance of the conspiracy* are not hearsay and therefore are not excludable as such. Haddock's statement to Officer Gunderson does not fall within the ambit of this rule because her statement was not made during or in furtherance of the conspiracy. The statement was made after the completion of the crime and after her arrest, and was not made to conceal or perpetuate the conspiracy. Therefore, it was not properly admissible under I.R.E. 801(d)(2)(E). *See State v. Caudill,* 109 Idaho 222, 226, 706 P.2d 456, 460 (1985).[1] Nor was Haddock's out-of-court statement admissible under I.R.E. 804(b)(3) as a statement against interest, for the portion of her statement implicating *Pecor* was not against *Haddock's* penal interest. Moreover, Haddock was not "unavailable as a witness," a prerequisite for the admission of hearsay under I.R.E. 804.

■ We conclude, however, that the erroneous admission of this testimony does not

necessitate reversal of the judgment. An error in the admission of evidence will not warrant a new trial if the appellate court can conclude, beyond a reasonable doubt, that the jury would have reached the same result had the error not occurred. *State v. Woodbury,* 127 Idaho 757, 761, 905 P.2d 1066, 1070 (Ct.App.1995). Where essentially the same information that was related through inadmissible evidence has also been placed before the jury through other admissible testimony, the error may be deemed harmless. *See Woodbury, supra; State v. Gomez,* 126 Idaho 700, 705, 889 P.2d 729, 734 (Ct.App.1995). In this case, the hearsay evidence was merely repetitive of Haddock's own testimony at trial. Haddock herself testified that Pecor handed her a cigarette package containing the methamphetamine, and she was subject to full cross-examination. Based upon this independent testimony from the declarant who was the source of the hearsay statement, we conclude that the error in allowing Gunderson to testify to Haddock's out-of-court statement was harmless beyond a reasonable doubt.

## B. Admission of Urinalysis Results

Pecor challenges the district court's denial of his motion to suppress the results of a urinalysis showing that, the day after his arrest, Pecor's urine contained methamphetamine. Pecor argues that the urine sample was procured in violation of his Fourth Amendment rights, that its probative value was outweighed by the risk of unfair prejudice, and that the State did not make a timely disclosure of the urinalysis results.

### 1. Legality of Search

■ We first address Pecor's challenge to the district court's denial of his motion to suppress on constitutional grounds. Our standard of review is one of deference to factual findings of the trial court unless they are clearly erroneous, while giving free review to the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found.

---

1. Although the *Caudill* decision preceded adoption of the Idaho Rules of Evidence, the common law co-conspirator hearsay exception discussed

in *Caudill* is substantively the same as I.R.E. 801(d)(2)(E).

*State v. Pick,* 124 Idaho 601, 603, 861 P.2d 1266, 1268 (Ct.App.1993); *State v. Heinen,* 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct. App.1988).

■ According to Pecor's testimony, a jailer informed Pecor that Pecor's probation officer had requested a urinalysis. Pecor then provided a urine sample, which tested positive for the presence of methamphetamine. Pecor acknowledges that he was a probationer at the time of his arrest and that he had consented to warrantless searches as a condition of probation. He nonetheless asserts that the probation officer needed "reasonable suspicion" to request a urine sample. He relies upon *State v. Palmer,* 110 Idaho 142, 715 P.2d 355 (Ct.App.1985), and *State v. Pinson,* 104 Idaho 227, 657 P.2d 1095 (Ct.App. 1983), where we held that: (a) before conducting a warrantless search of a parolee's person or property, a parole officer must have some reasonable grounds to believe that the individual had violated a condition of his parole, and (b) the search must be reasonably related to disclosure or confirmation of the suspected violation. *See also State v. Vega,* 110 Idaho 685, 686, 718 P.2d 598, 599 (Ct.App.1986). *Palmer* and *Pinson* are inapposite, however, because in those cases the parolee had not consented to warrantless searches as a condition of his parole. Subsequent to the *Palmer* and *Pinson* decisions, the Idaho Supreme Court held that the "reasonable grounds" requirement for warrantless searches by probation or parole officers does not apply when the individual who is the subject of the search has entered into a probation or parole agreement that includes a consent to warrantless searches. *State v. Gawron,* 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987). *See also State v. Peters,* 130 Idaho 960, 963, 950 P.2d 1299, 1302 (Ct.App. 1997). Therefore, Pecor's argument is without merit.

## 2. Untimely Disclosure

We next consider Pecor's assertion that the urinalysis evidence should have been excluded because it was not timely disclosed by the prosecution. The prosecutor neglected to notify Pecor's counsel of the test results until four days before trial although the prosecutor had received the laboratory report three months earlier. The trial court found that the failure to make timely disclosure was inadvertent and concluded that the evidence should not be excluded because Pecor had not shown that he was prejudiced by the tardy notice.

■ When an issue of late disclosure of evidence is presented on appeal, our inquiry is whether the delay in disclosure prejudiced the defendant's preparation or presentation of his defense so that he was prevented from receiving a fair trial. *State v. Smoot,* 99 Idaho 855, 859, 590 P.2d 1001, 1005 (1978); *State v. Hansen,* 108 Idaho 902, 904, 702 P.2d 1362, 1364 (Ct.App.1985). Prejudice is not established by a mere claim that additional investigation or testing could have been conducted. *State v. Tapia,* 127 Idaho 249, 255, 899 P.2d 959, 965 (1995); *State v. Hawkins,* 131 Idaho 396, 405, 958 P.2d 22, 31 (Ct.App. 1998).

■ We agree with the trial court's determination that Pecor demonstrated no prejudice either at the time of his motion to exclude the urinalysis or on his subsequent motion for a new trial. At the hearing on his motion to exclude this evidence, Pecor was given an opportunity to thoroughly examine the State's expert regarding the testing procedures and methodology used in analyzing the sample. Pecor has not shown how any greater advance notice would have enhanced his preparation or presentation of his defense in that regard. Pecor asserts that the untimely disclosure prevented the defense from independently analyzing the sample, but he apparently made no effort to obtain such an independent analysis post-trial to support his motion for a new trial, and he therefore has made no showing that such testing would have been beneficial to the defense. As in *Hawkins, supra,* "The circumstances presented here demonstrate only a potential for prejudice, not realized prejudice." *Id.* at 406, 958 P.2d at 32.

## 3. Relevance

■ Finally, we consider Pecor's contention that the district court should have excluded the urinalysis results on the ground

that the evidence was irrelevant or, if relevant, that its unfair prejudicial effect outweighed its probative value. Evidence is relevant only if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. I.R.E. 403; *State v. Clay*, 112 Idaho 261, 268-69, 731 P.2d 804, 811-12 (Ct.App.1987).

Neither the district court nor the State has identified for our review the perceived relevance of the urinalysis. However, even assuming, without deciding, that the evidence was either irrelevant or more prejudicial than probative, we conclude that no relief is warranted in view of the remaining evidence of Pecor's guilt. As noted above, an evidentiary error will not necessitate a new trial if the error was harmless beyond a reasonable doubt. In this case, the evidence against Pecor came from many sources. Rebecca Wilson testified that Pecor and Singlestar told her they would be driving to Coeur d'Alene to obtain some methamphetamine. Georgia Haddock testified that Pecor delivered the methamphetamine to her, and Scott Cornell testified that Pecor told him that the methamphetamine was in a cigarette packet that Pecor had handed to Haddock. Harold Cornell, Scott Cornell's father, testified that he had a conversation with Pecor in which Harold asked Pecor about Scott's involvement in the crime. Pecor told Harold that Scott was not even supposed to be present at the transaction and that Scott had nothing to do with the sale. According to Harold Cornell, Pecor admitted that he had "got some stuff" as a favor for a friend and that he felt he had been set up. Nancy Jones, Harold Cornell's girlfriend, testified that she also had a conversation with Pecor after his arrest. During that conversation, Pecor admitted that he had acquired drugs in Coeur d'Alene and that he and Singlestar had gone to the park to deliver them to a buyer, although he did not say who the buyer was. Given the breadth of evidence against Pecor, we are persuaded that the jury's verdict would have been no different had the urinalysis been excluded.

## C. The State's Expert Witness

Pecor also contends that the trial court should not have allowed the State's forensic expert, Chester Park, to testify to his determination that the substance found in Haddock's car was methamphetamine. According to Pecor, Park was not qualified to render such an opinion because, in response to a question from defense counsel, Park was unable to recite the "chemical composition" of methamphetamine. The argument is spurious. The qualification of an expert to render an opinion under I.R.E. 702 does not turn upon his or her capacity for memorization, and an inability to recite from memory the composition of a chemical compound has no bearing upon an expert's capacity to identify the compound through proper application of reliable testing methods. Park described his extensive education and experience as a forensic scientist, described the tests performed to identify the methamphetamine, testified that these tests are accepted in the scientific community, and described the procedures used in his laboratory to ensure that the tests were accurate. The district court did not abuse its discretion in allowing Park to testify to his finding that the substance seized was methamphetamine.

## D. Failure to Arrest Singlestar or Search Her Automobile

In his motion for a new trial or for dismissal of the charges, Pecor asserted that the State violated his due process rights by not arresting Linda Singlestar and not searching her car at the time of Pecor's arrest. Although Pecor does not describe any evidence that could have been procured through such a search, identify any facts showing the officers had probable cause to arrest Singlestar for any crime, or explain how Singlestar's arrest would have benefited him, Pecor contends that the officers' neglect to search the car or arrest Singlestar violates their duty to preserve evidence. This argument is meritless.

According to Pecor's logic, a law enforcement agency must leave no stone un-

turned in order to uncover evidence that might be useful to the accused. Such is not the law. The Due Process Clause of the Fourteenth Amendment to the United States Constitution imposes upon the State a duty to *preserve* exculpatory evidence for potential use by the defendant once the evidence has been acquired. *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *State v. Fain,* 116 Idaho 82, 91, 774 P.2d 252, 261 (1989). However, this duty does not expand to an obligation to *procure* evidence for the defense. *State v. Reyna,* 92 Idaho 669, 674, 448 P.2d 762, 767 (1968); *State v. Bryant,* 127 Idaho 24, 28, 896 P.2d 350, 354 (Ct.App.1995); *State v. Sena,* 106 Idaho 25, 27, 674 P.2d 454, 456 (Ct.App.1983); *State v. Wells,* 103 Idaho 137, 139, 645 P.2d 371, 373 (Ct.App.1982).

### E. Plea Agreements With Witnesses

Pecor's next argument is somewhat enigmatic. He asserts that the State violated his rights by entering into plea bargains with Rebecca Wilson, Scott Cornell, and Georgia Haddock, thereby procuring their testimony against Pecor. Pecor asserts that the prosecutor's plea negotiations were governed by I.C. § 19–1114 and –1115, and that the prosecutor's non-compliance with these statutes mandates reversal of Pecor's conviction.

■■■ Pecor apparently labors under the misconception that Sections 19–1114 and –1115 govern all plea agreements. To the contrary, both sections are inapplicable here. Section 19–1114 authorizes a prosecutor, subject to court approval, to form an agreement granting testimonial immunity to an otherwise recalcitrant witness and provides that the witness may not be prosecuted thereafter on the basis of evidence that the witness would otherwise have been privileged to withhold. The language of the statute is entirely permissive in that it allows the prosecutor to form such an agreement; it does not *require* that the prosecutor enter such an agreement every time he or she is a party to a plea agreement with a defendant who may become a witness in another prosecution. Nor does the statute apply when a witness

voluntarily gives testimony without demanding immunity. Section 19–1115 allows the trial court, under certain circumstances, to compel testimony or evidence from a witness who has refused to answer questions or produce evidence in a criminal proceeding. As the record here does not reflect any refusal to give evidence by any witness, the statute has no bearing on this case.

Idaho adheres to the general rule that an accomplice's testimony is admissible notwithstanding that it was procured by a plea bargain. *State v. Garcia,* 102 Idaho 378, 386, 630 P.2d 665, 673 (1981). Pecor has not shown that any exception to this general rule applies in his case.

### F. Abuse of Subpoena Power

■■■ Pecor next asserts that prosecutor abused .the subpoena process by subpoenaing several witnesses to attend a meeting at his office in preparation for trial. Pecor makes a bald assertion that the prosecutor "used the threat of jail, fine and contempt of Court if the witnesses failed to attend this meeting." This allegation is not supported by any evidence in the record. Indeed, Pecor has not directed this Court to anything in the record showing even that such subpoenas (as distinguished from trial subpoenas) were served or on whom. We therefore decline to consider the issue further.

### G. Corroboration of Co-conspirator Testimony

Pecor next argues that his conviction must be reversed because it is based solely upon testimony of his accomplices which was not corroborated by independent evidence. He relies upon Idaho Code § 19–2117, which provides:

> A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof.

This statutory corroboration requirement is intended to protect against the danger that an accomplice may wholly fabricate testimony, incriminating an innocent defendant in order to win more favorable treatment for the accomplice. *State v. Campbell,* 114 Idaho 367, 369, 757 P.2d 230, 232 (Ct. App.1988); *State v. Pierce,* 107 Idaho 96, 101, 685 P.2d 837, 842 (Ct.App.1984). To satisfy the statute, corroborating evidence must connect the defendant to the crime, but it need not be sufficient, in itself, to convict the defendant, and it need not corroborate the testimony of the accomplice in every detail. *Campbell, supra; State v. Aragon,* 107 Idaho 358, 364, 690 P.2d 293, 299 (1984); *State v. Evans,* 102 Idaho 461, 463, 631 P.2d 1220, 1222 (1981). The corroborating evidence may be slight, need only go to one material fact and may be entirely circumstantial. *State v. Campbell,* 114 Idaho 367, 369, 757 P.2d 230, 232 (1988). Statements attributed to the defendant himself may serve as the necessary corroboration. *Campbell,* 114 Idaho at 370, 757 P.2d at 233.

Pecor asserts that the only evidence against him came from two accomplices, Haddock and Scott Cornell, and the allegedly irrelevant results of the urinalysis performed the day after Pecor's arrest. The record shows, however, that there were two non-accomplice witnesses, Harold Cornell and Nancy Jones, who corroborated the accomplice testimony. As noted above, these witnesses both testified about conversations with Pecor in which he admitted his involvement in the drug transaction. These admissions by Pecor corroborate the testimony of Haddock and Scott Cornell that Pecor delivered the methamphetamine. Therefore, we conclude that the evidence at trial was sufficient to satisfy I.C. § 19–2117.

## H. Prosecutorial Misconduct in Remarks to Jury

Pecor also asserts that he was deprived of a fair trial as the result of the prosecutor's remarks during his opening statement to the jury. Although Pecor did not object to these comments at trial, we will nonetheless conduct a review to determine whether the prosecutor made statements so inflammatory that a timely objection would not have cured the inherent prejudice. *See State v. Higgins,* 122 Idaho 590, 600, 836 P.2d 536, 546 (1992); *State v. Sharp,* 101 Idaho 498, 503, 616 P.2d 1034, 1039 (1980). Our review is limited to whether " the record shows that the prosecuting attorney has been guilty of misconduct calculated to inflame the minds of jurors and arouse prejudice or passion against the accused by statements in his arguments of facts not proved by evidence...." *State v. Spencer,* 74 Idaho 173, 183–84, 258 P.2d 1147, 1154 (1953). *See also State v. Higgins, supra; State v. Sharp, supra; State v. Baruth,* 107 Idaho 651, 656, 691 P.2d 1266, 1271 (Ct.App.1984). After reviewing the comments which Pecor claims were impermissible we find that they were not so inflammatory that an objection and curative instructions could not have remedied their prejudicial effect. Therefore, we conclude that any error was waived by Pecor's failure to object during the trial.

Pecor also argues that he was deprived of a fair trial as the result of the prosecutor's remark during closing argument that, "[Pecor] is the dealer, he is the dealer to your sons and to your daughters." Pecor objected to this statement at the time it was made, but the district court overruled the objection.

We agree with Pecor that the prosecutor's statement was an improper reference to the jurors' families and hypothesized the commission of a crime against them. *See State v. Reynolds,* 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct.App.1991). This type of hypothesis is an appeal to jurors' fears, not a "fact" proven by the evidence nor a reasonable inference based upon the evidence. Therefore it is not a proper consideration for the jury's decision or for counsel's argument. *See State v. Brown,* 131 Idaho 61, 951 P.2d 1288 (Ct.App.1998); *Baruth, supra.*

We must next determine whether this prosecutorial misconduct requires that the judgment be vacated. An error or defect in a criminal trial that does not affect substantial rights of the defendant will not necessitate a new trial. I.C.R. 52; *State v. Pizzuto,* 119 Idaho 742, 753, 810 P.2d 680, 691 (1991). That is, convictions will not be

set aside for "small errors or defects that have little, if any, likelihood of having changed the results of the trial." *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705, (1967). *See also State v. Garcia,* 100 Idaho 108, 111, 594 P.2d 146, 149 (1979); *Reynolds,* 120 Idaho at 451 n. 5, 816 P.2d at 1008 n. 5. Where prosecutorial misconduct is shown, the test for harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *Reynolds,* 120 Idaho at 451, 816 P.2d at 1008; *Baruth,* 107 Idaho at 658, 691 P.2d at 1273.

Based upon the evidence that we have outlined above, we are persuaded, beyond a reasonable doubt, that the jury would have reached the same conclusion here if the prosecutorial misconduct had not occurred. Therefore, the prosecutor's misconduct in closing argument, and the district court's failure to sustain Pecor's objection thereto, were harmless errors.

## CONCLUSION

Pecor has identified no reversible error in the proceedings below. Although trial errors occurred, we conclude that these defects were harmless beyond a reasonable doubt. Accordingly, the judgment of conviction is affirmed.

Judge SCHWARTZMAN and Judge Pro Tem BENGTSON concur.