IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41540

| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 804 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 6, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ERIC LAGRANDE HOUSER, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John R. Stegner, District Judge; Hon. Barry Watson, Magistrate.

Intermediate appellate decision of the district court affirming judgment of conviction for misdemeanor battery, affirmed.

John M. Adams, Kootenai County Public Defender; Jay W. Logsdon, Deputy Public Defender, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Eric LaGrande Houser was convicted of misdemeanor battery. He contends that the magistrate court erred by admitting evidence of his intoxication and by excluding impeachment evidence. He also asserts numerous claims of prosecutorial misconduct, including a claim that the State impermissibly emphasized the victim's shoulder injury. On intermediate appeal, the district court affirmed the judgment of conviction, and Houser now further appeals.

## I.

## BACKGROUND

Houser was charged with misdemeanor battery, Idaho Code § 18-903. The State alleged that while Houser was a patient at Kootenai Medical Center, he "hit, slapped, punched, kicked and/or otherwise struck Gregory D. Manning," a nurse. Both parties filed evidentiary motions in

1

limine, Houser seeking to exclude evidence of his prior drug use, and the State seeking to exclude evidence of Manning's disciplinary history at work and of the hospital's policy regarding violent or agitated patients. The court granted both motions in part, and denied both motions in part and the case proceeded to trial.

At trial, Manning testified that Houser had arrived at the hospital in an ambulance and spent the night in the emergency room. Houser, who apparently had overdosed on methamphetamine, did not require acute care but was permitted to sleep overnight in the hospital before being discharged. Manning woke Houser in the morning and helped him get ready to leave. Manning put Houser's socks on him and then began to put Houser's shoes on. Manning testified that as he did so, Houser yelled at Manning, indicating he was in pain and kicked Manning. Houser then struck Manning several times and threw the shoes at him. At that point, Manning called "Code Gray," a reference to a violent or agitated patient and restrained Houser. Various hospital staff came to Manning's aid. Houser was eventually arrested.

Houser's testimony at trial was self-contradictory. He testified that he did not believe he had kicked Manning, but admitted that it was possible. He testified that he kicked reflexively, but also aimed his kick to avoid striking Manning. He explained that he was delusional at the time of the alleged offense, but later explained that he meant he was groggy.

The jury returned a guilty verdict. Houser appealed to the district court, which affirmed the judgment of the magistrate court. Houser further appeals, challenging the district court's affirmance of the magistrate court's evidentiary rulings and asserting prosecutorial misconduct.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the

decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

## A. The Court Did Not Err by Admitting Evidence of Houser's Drug Use

Houser filed a motion in limine seeking to exclude evidence that he had been using methamphetamine and marijuana shortly before he was brought to the hospital. He argued that the evidence was irrelevant and unfairly prejudicial. The State argued that the evidence was relevant to Houser's agitated state which, in the State's view, was "the purpose for the contact." The State also asserted that the evidence would explain why, in a video exhibit, Houser appeared lethargic, incomprehensible, and delayed in his responses. Because the evidence of prior drug use would explain those conditions, the State contended the jury would be less likely to make erroneous assumptions about Houser's mental state. The magistrate court held that evidence that Houser had recently used drugs and that those drugs had an ongoing effect on his behavior was admissible, but evidence of drug use prior to that time was excluded.

Idaho Rule of Evidence 404(b) specifies: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but states that such evidence may be admissible if relevant for other purposes. Thus, this rule prohibits introduction of evidence of misconduct other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). *See also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002).

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could find the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). In this case, Houser does not challenge the existence of his drug use as an established fact. Therefore, we address only the relevance and unfair prejudice issues. We exercise free review of the trial court's relevance

3

determination, *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008), but the trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed absent an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

Here, it is apparent that the State adduced evidence of Houser's drug use for a purpose other than to show bad character or propensity to commit a crime. The effects of a drug on a person's mental state are not "character," or moral qualities. Accordingly, evidence that a person is intoxicated, when used to show the physiological and psychological effects of those drugs on the person at the time of the offense, does not amount to the sort of propensity evidence prohibited by I.R.E. 404(b). A physician who practiced emergency medicine at the Kootenai Medical Center testified that methamphetamine use causes paranoia, agitation, confusion, psychosis, and hallucination. In turn, these effects may cause a user to engage in violent behavior. Thus, evidence of Houser's drug use was probative to demonstrate that he had the requisite criminal intent when he struck Manning and tended to negate the defense that Houser kicked reflexively.

Nonetheless, evidence of drug use may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. We find no abuse of discretion, however, in the trial court's balancing of the probative value of this evidence against the danger of unfair prejudice. Since most people do not batter a nurse even if the nurse causes physical pain in the process of providing services, the evidence of methamphetamine intoxication was highly relevant to explain Houser's otherwise aberrant choice to kick a nurse. The trial court permissibly concluded that this probative value was not outweighed by the danger of unfair prejudice.

## B.     The Exclusion of Evidence of Manning's Prior Workplace Discipline

The State filed a motion in limine seeking to exclude evidence that the hospital had taken disciplinary action against Manning a few years earlier as a result of his self-report that he had administered incorrect medicine to a patient. The State argued that an accurate self-report was not relevant impeachment evidence because it did not show any dishonesty. The magistrate court held that the disciplinary action was not relevant impeachment evidence because the circumstance that prompted the disciplinary action was unrelated to the facts of Houser's case and was not related to a pertinent trait of character.

On appeal, Houser argues that the evidence was relevant to show that Manning was biased because he had an interest in maintaining his employment. In Houser's view, Manning "had almost been fired" after the disciplinary incident and could ill afford another determination that he violated hospital rules. Houser also argues that a determination that Manning was to blame for the altercation might threaten Manning's opportunity to collect worker's compensation for his injuries. For both reasons, Houser argues the jury should have been informed of Manning's motivation to lie.

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401; *see also Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

Here, we conclude that Houser has failed to demonstrate reversible error. Houser's factual claims are speculative. Our record contains limited information regarding the prior disciplinary action or its ongoing effects on Manning's employment. It is entirely possible that the workplace incident was insignificant and did not have any ongoing effect on Manning's employment situation. More importantly, to the extent any error occurred, it was harmless for the reasons set forth in Section D.

## C.     The Exclusion of the "Code Gray" Evidence

The State's motion in limine also sought to exclude references to the hospital's "Code Gray" policy detailing the appropriate response to disruptive, aggressive, or combative patients. It argued that the policy was not relevant and would create confusion as the standards applicable in Manning's workplace differed from the legal standard governing battery.

Houser argued that admitting the substance of the Code Gray policy would reduce jury confusion. During the altercation, Manning had called out a Code Gray. Houser argued that the policy should be admitted to explain what that meant. He also argued that the policy should be admitted to show Manning's potential motive to lie; namely, if Manning violated the policy, his employment could be terminated.

5

The magistrate court held that either party was permitted to describe, in general terms, the meaning of "Code Gray" in order to avoid confusing the jury. It went on to hold that some portions of the Code Gray manual could be mentioned, including policies promoting early intervention and attempts to diffuse volatile situations. However, the court held that it would not permit a mini-trial in which the jury would be asked to determine if the policy was violated and what disciplinary action, if any, would be undertaken. The magistrate court further said:

> [W]e're not gonna be having a--trial on whether or not um, the nurse should--should be--have undertaken disciplinary action or--employment issues. We're not gonna get into that. So--So um, you know, we're not gonna be getting into this whole policy thing um, and uh, we're not gonna be getting into whether or not there's employment issues there as a result of that. But I, you know, if--if Code Gray comes up, we need to know what it is and what the--just the general parameters of it are. I don't see any problem with that.

It is not clear whether the magistrate's ruling is based upon relevancy or upon concerns regarding jury confusion or waste of time. The court appears to have permitted some discussion of the policy but prohibited a mini-trial to determine whether Manning had violated specific provisions of the policy and what sanctions could be imposed under that policy. If that was what the magistrate intended, then Houser was permitted to adduce some evidence of Manning's potential motive to be untruthful, but not permitted to present cumulative evidence or belabor the issue. It appears that Houser was not allowed to ask what the result of a policy violation might be or whether Manning could face employment consequences for violating the policy.

Because the magistrate's ruling is not entirely clear and because an alternative basis for affirmance is available, we need not determine whether the ruling was in error. We conclude that any potential error in excluding this evidence was harmless.

## D. Any Error in the Exclusion of the Prior Disciplinary Action or the Code Gray Policy was Harmless

To the extent the district court erred by excluding evidence of Manning's prior disciplinary action or evidence pertaining to the Code Gray Policy, we conclude that error is harmless. Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that a violation has occurred, the State has the burden of demonstrating to the appellate court beyond a reasonable

6

doubt that the violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010).

Houser was allowed to present a general argument that Manning, not Houser, was at fault for the altercation. He was permitted to discuss the Code Gray manual and its requirements for dealing with agitated or violent patients. He was also permitted to argue, in closing, that Manning may have violated those procedures. In this case, showing that Manning's alleged conduct was a violation of specific work policies or procedures would not have been particularly compelling evidence. Houser did not allege a small or technical deviation from the workplace policy, the sort of thing one might hope to hide from an employer. Rather, Houser alleged that he was seriously battered. If the jury accepted Houser's testimony, it would be readily apparent that Manning's conduct violated Idaho law and would amount to gross misconduct in nearly any workplace. No reasonable juror could believe that the hospital would tolerate that type of conduct. Accordingly, the inference that Houser may have been precluded from arguing--that Manning could be terminated or disciplined if he mistreated Houser--would have been obvious to the jury from the admitted evidence.

Moreover, because another witness partially supported Manning's account and because Houser gave inconsistent or confusing testimony, this was not a close case. The testimony of a charge nurse at the hospital tended to corroborate Manning's version of events. The nurse testified that he heard both Manning and Houser shouting from inside a hospital room. When he came into the room, he saw Houser attempt to kick Manning in the face. Then he saw Houser attempt to strike Manning with a partially closed fist. He did not observe Manning attempting to injure Houser, but did see Manning try to restrain Houser. Houser continued to struggle after the nurse grabbed Houser, and the struggling continued until several security guards entered the fray.

Houser testified to various facts that would tend to cause the jury to conclude he was not a credible witness. He conceded that, at the time of the alleged kicking, he was confused as a result of methamphetamine use and a lack of sleep, and he testified that he was experiencing delusions. Later in his testimony, he attempted to explain that he was not delusional, but merely groggy, but the jury was not required to accept this explanation. Houser also admitted kicking his shoe off and that in so doing, he may have kicked Manning. Originally, he claimed that the kick was reflexive, but later asserted that he made a conscious effort to avoid kicking Manning. As the State argued, these descriptions are inconsistent.

7

Because any probative value of the excluded evidence was nominal, because other witnesses confirmed that Houser was combative, and because Houser's own testimony undermined the persuasiveness of his defense, we conclude that any error was harmless beyond a reasonable doubt. We are confident beyond a reasonable doubt that the exclusion of evidence of Manning's prior disciplinary incident and evidence that Manning's conduct, as alleged by Houser, would have violated a specific work policy did not contribute to the verdict.

**E.      The Reference to Manning's Sling Was Not Prosecutorial Misconduct**

Houser argues that the State impermissibly attempted to appeal to the sympathy of the jury by needlessly eliciting a reference to Manning's injury. The prosecutor had asked a witness to identify various people involved in the altercation. After the witness referenced Manning, the following exchange occurred:

> Q. Okay. Do you recognize the person that you've been referring to as Mr. Manning as present in the courtroom this afternoon?
> A. He's not here right now, but, yes, I've seen him here today.
> Q. Okay. And he was the person who was the--the other nurse that was working--
> A. Yes.
> Q. --that day that you talked about?
> A. Yes.
> Q. And you have seen him here?
> A. Yes.
> Q. Was there anything descriptive about him today, anything standing out about his appearance today that would help identify him?
> A. His arm injury.
> Q. Okay. what--what denotes he has an arm injury?
> A. Um, he's in a sling.

After this exchange took place, Houser objected and moved to strike the comment. On appeal, Houser contends that the "only possible motivation for eliciting this testimony was to emphasize the injury to the jury in order to arouse sympathy and have them identify with Mr. Manning."

"Appeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are improper." *State v. Troutman*, 148 Idaho 904, 908, 231 P.3d 549, 553 (Ct. App. 2010); *see also State v. Beebe*, 145 Idaho 570, 575, 181 P.3d 496, 501 (Ct. App. 2007) (holding that it is improper for the State to appeal to the jury to convict a defendant based upon sympathy for a victim); *see generally State v. Severson*, 147 Idaho 694, 719-20, 215 P.3d 414, 439-40 (2009) (discussing various types of improper arguments including inflaming the emotions of the

8

jury, appealing to the sympathy of the jury by referencing a murder victim's family, and using inflammatory words to disparage a witness).

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* When there has been a contemporaneous objection we determine factually if there was prosecutorial misconduct, then we determine whether the error was harmless. *Id.*; *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). A conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Pecor*, 132 Idaho 359, 367-68, 972 P.2d 737, 745-46 (Ct. App. 1998). Where prosecutorial misconduct is shown, the test for harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *Id.* at 368, 972 P.2d at 746.

In this trial, the prosecutor asked several witnesses to identify a person sitting in the courtroom about whom the witness was speaking. The prosecutor usually asked the witness to identify an article of clothing that the person was wearing or asked where the person was located in the courtroom. That is generally a proper and expedient means of identifying a person. However, when a witness is asked to identify *a person who is not in the room*, it is more difficult to identify or describe that person and there is no legal requirement that a witness identify a person solely by reference to their clothing or prior location in the courtroom. Here, from our limited record, it appears that the easiest and most obvious means for the witness to identify Manning was by reference to the sling. Because the jury had already seen Manning wearing the sling and because the fact that Manning was injured was not belabored, we find no indication that the prosecutor was attempting to appeal to the jury's sympathies. Houser has shown no prosecutorial misconduct.[1]

---

[1] In the same section, Houser cites numerous statements of the prosecutor that he characterizes as misconduct. However, in his first brief, he provided no argument or authority tending to show that any of them amounted to misconduct. He merely stated in a conclusory fashion that the prosecutor referred to irrelevant evidence or that a comment was improper. We

### III.

### CONCLUSION

No reversible error has been shown.  Therefore, the appellate decision of the district court is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**

---

have repeatedly held that a party waives an issue on appeal if either authority or argument is lacking.  *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).  Houser seeks relief from this rule and provides citation to authority in his reply brief.  We decline his invitation to consider that authority.  Our rule is based upon numerous practical and equitable concerns, including assuring that the respondent in an appeal has the opportunity to address the issues raised by the appellant.  Our consideration of the authority set forth in his reply brief would deprive the State of its opportunity to refute Houser's arguments.

Further, no objection was made at trial to most of these statements of the prosecutor, and as to those to which objection was made, Houser acknowledges that the error was harmless.  As to the prosecutor's comments to which no objection was made, Houser does not argue that any of them individually met the standard for fundamental error.  *See State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010).  Instead, he urges this Court to consider the prosecutor's alleged improper statements cumulatively and hold that collectively they deprived Houser of a fair trial.  Idaho Supreme Court precedent precludes us from doing so.  *Id*. at 230-31, 245 P.3d at 982-83 ("alleged errors at trial, that are not followed by a contemporaneous objection, will not be considered under the cumulative error doctrine unless said errors are found to pass the threshold analysis under our fundamental error doctrine. . . .  Instances of prosecutorial misconduct that were not objected to at trial failed our threshold inquiry for fundamental error and are therefore not properly considered error for purposes of cumulative error review."); *State v. Severson*, 147 Idaho 694, 723, 215 P.3d 414, 443 (2009) ("errors not objected to at trial that are not deemed fundamental may not be considered under the cumulative error analysis"); *State v. Grove*, 151 Idaho 483, 496, 259 P.3d 629, 642 (Ct. App. 2011) (this Court declined to apply the cumulative error doctrine where the defendant failed to show fundamental error).