**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41590**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 65** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: October 18, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JEFFERY ALAN BAKER,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Patrick H. Owen, District Judge.

Judgment of conviction and unified sentence of life, with a minimum period of confinement of fifteen years, for murder in the first degree, <u>affirmed</u>.

Eric D. Fredericksen, Interim State Appellate Public Defender; Elizabeth A. Allred and Reed P. Anderson, Deputy Appellate Public Defenders, Boise, for appellant. Reed P. Anderson argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

---

HUSKEY, Judge

Jeffery Alan Baker appeals from the judgment of conviction for first degree murder of his eleven-week-old daughter, G.B. Baker raises the following issues on appeal: (1) the district court erred in failing to provide the jury with a unanimity instruction; (2) the district court erred in admitting into evidence a video animation of a child being violently shaken; (3) the State committed prosecutorial misconduct during its closing argument; and (4) the accumulation of errors violated his Fourteenth Amendment right to due process of law by depriving Baker of his right to a fair trial. We hold the district court did not err when it did not provide a unanimity instruction to the jury; the district court did not err in admitting into evidence a video animation of a shaken child; the State did not commit prosecutorial misconduct; and Baker's Fourteenth Amendment right to due process was not violated. Therefore, we affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Baker was charged with one count of first degree murder in connection with the death of his eleven-week-old daughter, G.B. It was alleged that Baker killed G.B. by committing an aggravated battery on G.B., either by shaking her or by causing blunt force trauma to her head which resulted in an injury to G.B.'s brain. At trial, the jury found Baker guilty of first degree murder and the district court sentenced him to a unified life sentence, with fifteen years determinate.

G.B. stopped breathing while under the care of Baker. Paramedics and firefighters responded to a 911 call and found G.B. pale and unconscious. After initial treatment at the scene, G.B. was transported to St. Luke's Hospital to receive further medical care. Additional care proved unsuccessful; G.B. was removed from life support and died several days later.

Baker's first trial resulted in a mistrial after a witness admitted she met with Baker while he was on parole. During the second trial, the State and Baker each presented expert testimony as to the cause of G.B.'s death. It was undisputed that G.B. stopped breathing while in Baker's care, yet the parties differed in their explanations as to why G.B. stopped breathing. The State called six medical experts to testify that G.B. died as a result of an aggravated battery, either from violent shaking or abusive head trauma.

Dr. Lucy Rorke-Adams, a neuropathologist who reviewed the medical records, autopsy report, tissue samples, police reports, and reports of other experts in the case, testified that abusive head trauma caused G.B.'s death. Dr. Rorke-Adams explained that the damage to the veins and the nature of the brain injury indicated a violent shaking occurred, causing a loss of consciousness. Dr. Rorke-Adams described how after G.B. was injured, she was propped up in a sitting position, which obstructed her airway and was a "secondary interference" with G.B.'s ability to take in oxygen. As a result of the head trauma, the unconsciousness, and the sitting position, G.B. suffered global ischemic encephalopathy, which is a fatal deprivation of oxygen in the brain.

The State also called Dr. Michael Sexton, a pediatrician, who testified that G.B. died as a result of being violently shaken. Dr. Sexton treated G.B. when she was in the hospital and noticed bleeding between the skull and the brain, as well as the broken blood vessels in her eyes.

2

Dr. Sexton testified the brain injury was caused by a sudden rotational force, which then caused G.B. to stop breathing and her heart to stop beating.

Baker called two physicians who testified that G.B. did not die as a result of being shaken, but instead, from natural causes. According to Baker's experts, the death was a result of cerebral venous thrombrosis (a clotting of the brain's blood vessels) which caused a seizure or respiratory arrest. The jury found Baker guilty of first degree murder and the district court imposed a unified life sentence, with fifteen years determinate.

## II.

## ANALYSIS

Baker makes four arguments on appeal: (1) the district court erred in failing to provide the jury with a unanimity instruction; (2) the district court erred by admitting a video animation of a child being violently shaken into evidence; (3) the State committed prosecutorial misconduct during its closing argument; and (4) the accumulation of errors violated Baker's Fourteenth Amendment right to due process of law by depriving him of his right to a fair trial.

### A. The District Court Did Not Err When it Failed to Provide a Unanimity Instruction

On appeal, Baker argues the district court erred because it failed to give a unanimity instruction to the jury regarding the cause of G.B.'s death. One of the State's experts, Dr. Rorke-Adams, testified that as part of the on-going sequence of events on the afternoon G.B. suffered head trauma and thereafter, Baker propped G.B. in a sitting position. Due to the head trauma and the resulting unconscious state, G.B.'s airway was blocked, which contributed to a lack of oxygen to her brain, causing her death. Baker argues the jury should have been required to reach a unanimous decision on the cause of death because the State introduced evidence the death occurred in one of three ways. Baker asserts the State presented evidence of death by violent shaking, blunt force trauma, and an obstructed airway. Baker concedes no unanimity instruction was required to determine whether G.B.'s death was caused by either shaking or blunt force trauma. But, Baker argues if G.B.'s death was caused by Baker propping her on the pillows and placing her in such a position that her airway was obstructed, he did not commit an aggravated battery, but instead committed involuntary manslaughter. Since this is a separate crime with a different mens rea element, he was essentially charged with causing G.B.'s death in one of two separate and distinctive ways--either an aggravated battery or an involuntary manslaughter. Because the jury could have found him guilty of either of the two distinct crimes, Baker argues a

3

unanimity instruction was necessary to determine in which way he caused G.B.'s death. In response, the State argues only one crime occurred--an aggravated battery. Further, if G.B. died as a result of an obstructed airway, that circumstance arose as a result of being rendered unconscious by the aggravated battery and, thus, is a secondary cause of death for which no unanimity instruction was required.

### 1. Standard of review for unanimity instructions

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). In order to be reversible error, an error in the jury instructions must have misled the jury or prejudiced the party challenging the instruction. *Severson*, 147 Idaho at 710, 215 P.3d at 430.

Baker did not object to the lack of a unanimity instruction at trial. A party typically cannot claim that a jury instruction was erroneous unless that party objected to the instruction prior to the start of jury deliberations. I.C.R. 30(b). However, even without a contemporaneous objection at trial, claims of instructional error may be reviewed for the first time on appeal under the fundamental error doctrine. *See State v. Anderson*, 144 Idaho 743, 748-49, 170 P.3d 886, 891-92 (2007); *State v. Hansen*, 148 Idaho 442, 444, 224 P.3d 509, 511 (Ct. App. 2009). This requires the defendant to persuade the appellate court that: (1) the alleged error violates one or more of the defendant's unwaived constitutional rights; (2) the alleged error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) there is a reasonable possibility that the alleged error affected the outcome of the trial proceedings. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

Idaho Code requires a trial court to provide instructions as to all matters of law necessary for the jury's information. I.C. § 19-2132. The jury instructions must contain the rules of law that are "material to the determination of the defendant's guilt or innocence." *State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct. App. 1999). Such obligatory instructions include those necessary to correctly inform the jury with respect to the nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted. *Id.*

4

Although trial courts are required to provide a general unanimity instruction, there is no requirement the jurors unanimously agree on the method by which the crime was committed. In addition to a general unanimity instruction, a trial court must also supply specific jury instructions "when it appears that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts" resulting in separate crimes. *State v. Gain*, 140 Idaho 170, 172, 90 P.3d 920, 922 (Ct. App. 2004).

### 2. Baker did not commit a separate crime when he placed G.B. in a sitting position

Baker argues the State presented evidence of a separate crime when it introduced evidence that Baker's act of propping G.B. on the pillows in such a way it caused an airway obstruction leading to her death. As such, Baker contends G.B.'s obstructed airway was a separate and independent crime in this case requiring a unanimity instruction. Although an independent crime would require a unanimity instruction, we find the act of propping G.B. in a sitting position was not a crime separate from aggravated battery. Since there is not a separate crime in this case, we need not address whether a crime with a separate mens rea element gives rise to the need for a unanimity instruction. Even if a second mens rea was at issue, this does not require a specific unanimity instruction where the jury's options do "not fall beyond the constitutional bounds of fundamental fairness and rationality." *Schad v. Arizona*, 501 U.S. 624, 626 (1991).

When the defendant commits several acts and each act would independently support a conviction, the instruction informs the jury it must unanimously agree on the specific occurrence that gives rise to the offense. *Miller v. State*, 135 Idaho 261, 269, 16 P.3d 937, 944 (Ct. App. 2000). Whether a course of criminal conduct constitutes a single or multiple offenses depends on "whether or not the conduct constituted separate, distinct and independent crimes" and "requires an inquiry into the circumstances of the conduct and consideration of the 'intent and objective of the actor.'" *State v. Bush*, 131 Idaho 22, 33-34, 951 P.2d 1249, 1260-61 (1997) (quoting *State v. Major*, 111 Idaho 410, 414, 725 P.2d 115, 119 (1986)). In *Miller*, the defendant was charged with two counts of lewd and lascivious conduct with a minor. *Miller*, 135 Idaho at 264, 16 P.3d at 940. To determine whether a unanimity instruction was required, this Court considered whether the alleged criminal conduct involved multiple offenses. *Id.* at 267, 16 P.3d at 943. Testimony in the case described six distinct and separate instances of genital contact,

5

each act separated by "an indeterminate period of time" and involving unique circumstances. *Id.* This Court found Miller committed multiple offenses because each incident was "a separate, distinct and independent crime, rather than a part of a continuing course of conduct without end." *Id.* Due to the separation of incidents, this Court held that Miller was entitled to an instruction that the jury unanimously find him guilty of an agreed-upon one or more of the six crimes. *Id.* at 267-68, 16 P.3d at 943-44.

A unanimity instruction is not required if the defendant is charged with one crime involving a single occurrence of a criminal act. *Severson*, 147 Idaho at 712, 215 P.3d at 431. In *Severson*, the defendant was charged with first degree murder, but it was unclear if the death was a result of poisoning or suffocation. *Id.* at 701, 215 P.3d at 421. The trial court provided general instructions to the jury which did not specify whether Severson killed his wife by poisoning her, suffocating her, or both. *Id.* Severson challenged the jury instructions on appeal, arguing the trial court should have instructed the jury to unanimously agree on the specific act by which he committed the murder. *Id.* at 710, 215 P.3d at 430. The Idaho Supreme Court disagreed, holding that a unanimity instruction was not required because Severson was charged with the single act of murder and evidence did not show he committed the offense on more than one occasion. *Id.* at 712, 215 P.3d at 432.

Here, the death of G.B. did not involve separate and distinct offenses. The offense--the murder of G.B.--was a single crime. The testimony at trial indicated that one evening, G.B. returned to Baker's residence at 4:30 p.m. appearing normal. Forty-five minutes later, G.B. required immediate medical attention because she had stopped breathing and lost consciousness. Expert testimony explained that in those forty-five minutes, G.B. was violently battered, resulting in a loss of consciousness and an inability to breathe. Unlike the defendant in *Miller*, who was alleged to have engaged in criminal conduct on six occasions over the course of six different days, Baker's offense involved only one event during one evening. Baker's criminal charge, defense, and trial all centered around whether he was guilty of a single instance of a single crime on a single date: first degree murder of a child under the age of twelve by means of aggravated battery.

Although Baker engaged in multiple acts on the day G.B. stopped breathing, these acts were not "separate, distinct and independent crime[s]" as in *Miller*. *Miller*, 135 Idaho at 267, 16 P.3d at 943. Instead, Baker's offense was a "continuing course of conduct without end" and,

6

therefore, became part of a single charge. Like in *Severson*, Baker was charged with a single act of murder. The evidence introduced at trial showed one continuous course of conduct beginning with the aggravated battery and ending with the lack of oxygen to G.B.'s brain and her resulting death. Thus, this case is more like *Severson* than *Miller*. Baker was charged with one act of first degree murder by committing an aggravated battery of a child under the age of twelve, committed in one of two ways and therefore, the district court did not need to provide a specific unanimity jury instruction.

### 3. Airway obstruction, as a result of Baker placing G.B. in a sitting position, was not an independent cause of G.B.'s death

Baker argues because the State presented evidence of two distinct potential causes of death and thus, two distinct and independent potential crimes, the district court should have given an instruction requiring the jury's unanimity as to which crime it could find Baker guilty of. Baker argues that the State's airway obstruction theory is not a means of committing first degree murder since the negligent placement of G.B.--not the battery--would be the actual cause of death. We disagree.

It is an accepted rule that a jury need not agree on the underlying facts that establish the elements of a crime. *Schad*, 501 U.S. at 631. To require unanimous factual findings would ignore how different jurors may be persuaded by different pieces of evidence. *Id.* at 631-32. Because of this, a court need not instruct the jury to unanimously agree on the facts giving rise to an offense. *State v. Adamcik*, 152 Idaho 445, 474, 272 P.3d 417, 446 (2012). There is no unanimity requirement even when facts supporting alternative means of establishing an element of a crime exist. *See Severson*, 147 Idaho at 712, 215 P.3d at 432 (holding that the jury could have found Severson murdered his wife by suffocating her, overdosing her, or both); *Downing v. State*, 136 Idaho 367, 372-73, 33 P.3d 841, 846-47 (Ct. App. 2001) (holding that a defendant charged with lewd conduct involving manual-genital and/or genital-genital contact was not entitled to a specific unanimity instruction because the prohibited acts were merely alternative means by which the defendant may be held criminally liable).

Here, Baker's argument on appeal isolates a single piece of expert testimony. At one point of Baker's cross-examination, a letter from Dr. Rorke-Adams was read, explaining the following:

> Moreover, even if [G.B.] had been conscious, she would not have been able to roll
> from a prone supine position or lift her chest and head from a prone position to

7

open the airway, as this ability does not develop until a baby is five or six months of age.

When Dr. Rorke-Adams was asked about the letter and whether a child of this age could have "slumped into this position, obstructed her airway, shut off the flow of oxygen and suffered the global ischemic hypoxia that caused her death," she agreed it was possible. Based upon this statement, Baker alleges negligence caused the death of G.B., rather than the aggravated battery.

The State and Dr. Rorke-Adams did not present the obstructed airway theory as evidence of negligence or a cause of death independent of the battery. Instead, the expert testified to the integral relationship between the shaking, the injury to the brain, the loss of consciousness, the slumped sitting position, the obstructed airway, and the resulting lack of oxygen in G.B.'s brain. When Dr. Rorke-Adams was asked if, to a reasonable degree of medical certainty, she determined the cause of G.B.'s death, she responded, "It was abusive head trauma." When directly asked if the death would have occurred if G.B. had not been shaken, Dr. Rorke-Adams answered, "No." When asked what caused the death, Dr. Rorke-Adams responded, "What killed [G.B.] was the shaking which led to the loss of consciousness and then a secondary interference with her ability to take in oxygen." Although, the expert's testimony described G.B.'s slumped, sitting position and its obstruction of her airway, this act was not independent of the earlier shaking and the resulting unconsciousness. In other words, the fact that G.B's airway was blocked after she was rendered unconscious because of the initial aggravated battery does not mean propping G.B. on the pillows was an independent act for which the jury could have found Baker guilty. This case, including Dr. Rorke-Adams' testimony, focused on the initial aggravated battery and the ways in which it caused the death of G.B. G.B.'s death was a result of the initial aggravated battery, which could be established by various methods and for which no unanimity instruction was necessary.

**B.      The District Court Properly Admitted the Video Into Evidence**

On appeal, Baker argues the district court erred when it admitted a video animation of a shaken baby because the video was irrelevant and its probative value was outweighed by the prejudicial effect on the jury. In response, the State contends the district court correctly found the evidence was relevant and illustrative for the testimony and the evidence was not unfairly prejudicial. At issue here is the second clip of a video animation (Exhibit 3) used in connection with Dr. Sexton's testimony. The second clip depicts the injuries that occur when an infant is

8

shaken. The district court overruled Baker's objection, allowing the evidence to be admitted for illustrative purposes only.

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. I.R.E. 403. The trial court's conclusions of whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice is reviewed under an abuse of discretion standard. *State v. Page*, 135 Idaho 214, 219, 16 P.3d 890, 895 (2000) (citing *State v. Matthews*, 124 Idaho 806, 809, 864 P.2d 644, 647 (Ct. App. 1993)).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

### 1. The video was relevant

Baker argues the video was irrelevant because it depicts injuries that did not occur in this case. The State responds that the evidence was relevant and properly admitted as an illustrative exhibit because it assisted the testimony of Dr. Sexton in his explanation of the death of G.B. Both parties analyzed the relevance of the video in relation to *Stevens*.

Stevens was convicted of first degree murder by committing aggravated battery on an eleven-month-old child. *Stevens*, 146 Idaho at 142, 191 P.3d at 220. During Stevens' jury trial, a State's expert witness testified and presented a video illustrating animated objects falling down stairs. *Id*. The video was used to demonstrate flaws in Stevens' theories, specifically that the

9

child's injuries were not the result of a fall down a flight of stairs. *Id.* at 143, 191 P.3d at 221. Stevens objected to admission of the video at trial and argued on appeal that the evidence was irrelevant because it did not accurately depict any issues in the case. *Id.* The Idaho Supreme Court disagreed, explaining the purpose of the testimony was to support the State's theory of the case and discredit Stevens' theory, particularly where the events surrounding the death were in dispute. *Id.* at 144, 191 P.3d at 222. The Court held that the evidence was relevant to the expert's testimony, supported the State's theory of the cause of death, and was therefore relevant, even if the video did not accurately depict every issue in the case. *Id.*

Here, the video at issue was relevant because it satisfied the evidentiary burden for the admission of illustrative evidence. Dr. Sexton's testimony sought to explain a possible cause of death, and he utilized the video evidence to explain the theory of the violent shaking. Baker objected to the video as it depicted tearing of veins, substantial bleeding, and a back-and-forth rotational force, none of which was at issue in this case. However, *Stevens* explains that evidence offered for illustrative purposes and in support of expert testimony need only assist the witness in this testimony, even if accuracy is questioned. *Id.* at 143, 191 P.3d at 221. The degree of tearing, bleeding, and shaking depicted in the video does not render the exhibit inadmissible even if those symptoms are depicted to a different degree than G.B.'s injuries. Instead, the issue for the jury to determine was whether Baker caused G.B.'s injuries and death. Therefore, the injuries were a material issue in this case. The video in its entirety was illustrative of Dr. Sexton's testimony, and he used the video to demonstrate the form of injury possible to G.B. As a result, the second video clip of Exhibit 3 was relevant.

## 2. The video was not unduly prejudicial

Baker next argues that even if the video is relevant, it still was inadmissible as its probative value was substantially outweighed by its prejudicial effect. He contends the graphic nature of the animation was misleading to the jury. The State responds that Baker failed to show an abuse of discretion regarding the admissibility of the video.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. I.R.E. 403. A lower court's determination under Idaho Rule of Evidence 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho

10

392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

Baker argues the video was misleading to the jury and its prejudicial effect outweighed any probative value. This argument assumes the issue before the jury was the accuracy of the video, rather than whether an action by Baker could have caused G.B.'s injuries. The district court correctly addressed the issue to the jury and did not abuse its discretion when it admitted the portion of the video in question. The district court admitted the video for illustrative purposes after hearing foundation as to its purpose and role in the expert's testimony. The district court also instructed the jury on the limitations of an illustrative exhibit. These decisions were within the court's discretion and consistent with applicable legal standards. Baker's arguments fail to show how the prejudicial effect or jury confusion from the video outweighed the probative value. Therefore, we affirm the decision of the district court to admit the video for illustrative purposes.

## C.     The State Did Not Engage in Prosecutorial Misconduct

Baker asserts he was denied a right to a fair trial because the State committed prosecutorial misconduct when it used a still image from Exhibit 3 in its closing argument. During its closing argument, over the objection of Baker, the State repeatedly used a still image from the State's Exhibit 3, which showed the anatomical structure of a child's brain and the injuries that would result from shaking. Baker argues the State moved beyond the scope of this illustrative purpose by utilizing an image of the video thirteen times during its closing argument.

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* When there has been a contemporaneous objection, we determine factually if there was prosecutorial misconduct and then we determine whether the error was harmless. *Id.*; *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). Where a defendant meets his or her initial burden of showing that a violation occurred, the State has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict. *Perry*, 150 Idaho at 227, 245 P.3d at 979. A

11

conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Pecor*, 132 Idaho 359, 367-68, 972 P.2d 737, 745-46 (Ct. App. 1998).

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588; *see also Raudebaugh*, 124 Idaho at 769, 864 P.2d at 607; *Pecor*, 132 Idaho at 367, 972 P.2d at 745.

Baker argues the exhibit's use should have been limited to the expert's testimony and to use part of the video in closing argument improperly appealed to the emotions of the jurors. After Baker's objection at trial, the district court considered the admissibility of the second clip of the video used as an illustrative exhibit for Dr. Sexton's testimony. In its decision to allow the video to illustrate aspects of the testimony, the district court explained it would give limiting instructions to the jury that the video was not presented as evidence of any actual injury, but rather for the sole purpose of illustrating a mechanism of injury. Prior to publishing the video, the district court gave the following explanation:

> Ladies and gentlemen, this exhibit is being admitted for illustrative purposes only. I'm going to give you a limiting instruction as to illustrative exhibits.
> This illustrative exhibit is not intended to depict any actual injury in this case. The purpose and intent of the illustrative exhibit is simply to illustrate this witness' testimony that he's already given.

Before deliberation, the jury was also given an instruction (Jury Instruction No. 13):

> Certain evidence was admitted for a limited purpose.
> At the time this evidence was admitted you were admonished that it could not be considered by you for any purpose other than the limited purpose for which it was admitted.
> Do not consider such evidence for any purpose except the limited purpose for which it was admitted.

The district court therefore provided limitations on the exhibit and explained these limits to the jury. We find no inadequacy in the district court's limitations.

A party may utilize admitted evidence in its closing argument. Idaho courts have not prohibited the use of illustrative exhibits during closing argument. Here, the State used a still-frame image from Dr. Sexton's video exhibit in its closing argument. Baker objected to this use during closing argument, but because the jury had previously received a limiting instruction regarding the video, the district court overruled the objection. We find no err in the district court's decision. Baker's position is not supported by case law, since this Court has never held an illustrative exhibit could not be used in a closing argument. Also, there is no evidence from the record that the use of the image contradicted or superseded the applicable limiting instructions already issued by the district court. Due to the latitude in closing argument, the prior admission of the evidence, and the lack of legal precedent to support a restriction, the district court did not err by allowing the use of the image during the State's closing argument.

**D.      Baker Was Not Deprived His Fourteenth Amendment Right to Due Process**

Lastly, Baker argues the district court's errors deprived him of a fair trial. He maintains that even if this Court finds all other errors harmless, the district court's errors amount to cumulative error when combined. In response, the State argues Baker failed to show two or more errors during his trial and thus, the doctrine of cumulative error does not apply.

Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *Adamcik*, 152 Idaho at 483, 272 P.3d at 455. However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id*. Here, Baker has failed to demonstrate at least two errors. Moreover, Baker has not alleged there were any unobjected-to errors that violated an unwaived constitutional right. As such, Baker has failed to establish any error--either objected to or unobjected to--and thus, we decline to find any cumulative error in this case.

### III.

### CONCLUSION

For the foregoing reasons, Baker's judgment of conviction is affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.