# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50437

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: January 15, 2025 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| JASON NICHOLAS LONG, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cynthia Yee-Wallace, District Judge.

Judgment of conviction for intimidating, impeding, influencing, or preventing the attendance of a witness and for being a persistent violator, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Amy J. Lavin, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Jason Nicholas Long appeals from his judgment of conviction for intimidating, impeding, influencing, or preventing the attendance of a witness and for being a persistent violator. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In Ada County Case No. CR01-21-38920, Long was charged with lewd conduct with a minor under the age of sixteen years and intimidating a witness.[1] It was alleged that Long

---

[1] Idaho Code Section 18-2604 prohibits intimidating, impeding, influencing, or preventing the attendance of a witness. For brevity, the charge is referred to in this opinion as intimidating a witness.

intimidated a witness, A.P.,[2] in the lewd conduct case during recorded phone calls which were made by Long from jail and occurred on or between September 25, 2021, and October 11, 2021 (hereafter "2021 calls"). A few days prior to trial, Long made more phone calls to A.P. These calls were made between April 2, 2022, and April 4, 2022 (hereafter "the 2022 calls"). Only the 2021 calls were admitted into evidence at that trial.[3] Long was acquitted of the lewd conduct charge but found guilty of intimidating a witness. A few days after the jury returned its verdict in that case, the State initiated the instant case charging Long with intimidating a witness based upon the 2022 calls. Prior to trial in this case, the State filed a notice of intent to present evidence pursuant to I.R.E. 404(b) seeking admission of the 2021 calls between Long and A.P. and between Long and his father.[4] After a hearing, the district court ruled that the 2021 calls were admissible under I.R.E 404(b). Long was found guilty of intimidating a witness and he admitted the factual basis for the persistent violator allegation. Long appeals.

## II.

## ANALYSIS

Long argues that the 2021 calls should have been excluded and that the district court erred by allowing the State to present evidence that Long had been charged with lewd conduct with a minor without instructing the jury that he had been acquitted of that charge. Long further asserts the State committed prosecutorial misconduct during closing argument and that, even if these errors are harmless individually, they constitute cumulative error. The State responds that the district court's evidentiary rulings are supported by substantial evidence, that the district court did not err in declining to instruct the jury regarding the acquittal, that Long has failed to establish prosecutorial misconduct and that, even if these errors are harmless individually, the errors (both

---

[2]     A.P. was not the alleged victim in the lewd conduct case. She was an adult who had been Long's girlfriend.

[3]     We do not have the record from Case No. CR01-21-38920. Long's trial counsel in the instant case alleged that the State unsuccessfully sought admission of the 2022 calls as I.R.E. 404(b) evidence in Case No. CR01-21-38920.

[4]     It appears that only the phone calls between Long and A.P. were introduced as evidence in Case No. CR01-21-38920. There were additional phone calls made by Long to his father which were not introduced at trial but were included in the phone calls admitted as I.R.E. 404(b) evidence in this case.

singularly and cumulatively) are harmless.  We hold that Long has failed to show error in the district court's evidentiary or jury instruction rulings and that Long has failed to establish prosecutorial misconduct.

**A.      Idaho Rule of Evidence 404(b)**

Idaho Rule of Evidence 404(b) provides, in relevant part:

> (1)      Prohibited Uses.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2)      Permitted Uses; Notice in a Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior.  *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009).  Of course, evidence of another crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule.  *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence pursuant to a Rule 404(b) objection, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could believe the conduct actually occurred.  If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice.  *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009).  On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record.  *Parmer*, 147 Idaho at 214, 207 P.3d at 190.  We exercise free review, however, of the trial court's relevancy determination.  *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008).  The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court:  (1) correctly perceived the

issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

In this case, Long does not challenge the existence or content of the phone calls as an established fact. Therefore, we address only the relevancy and unfair prejudice issues. Long asserts that the district court abused its discretion when it allowed the State to play recordings of the 2021 phone calls because the calls were not relevant to a material and disputed issue concerning the intimidating a witness charge against him in this case. He also asserts that any probative value they had was substantially outweighed by the danger of unfair prejudice. The State argues that the 2021 phone calls were admissible as relevant evidence to prove Long's plan, intent, and/or motive to intimidate A.P. and that the district court correctly found that the probative value of the phone calls was not substantially outweighed by any unfair prejudice.

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Garcia*, 166 Idaho 661, 670-71, 462 P.3d 1125, 1134-35 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010).

At trial, the State began its presentation of evidence by playing recordings of the 2021 calls which are the subject of this appeal. In the first call, from Long to his father on September 25, 2021, at 7:50 a.m., Long asked his father if he had "gotten ahold of [A.P.] yet." When his father told him he had not, Long instructed him to contact A.P. immediately and "ask her not to talk to anybody about anything." He told his father to make sure A.P. did not talk to "detectives or anything like that." Several times Long mentioned how important it was that his father contact A.P., finally telling him to "call her incessantly." The second call, also on September 25, 2021 (at 7:17 p.m.) was from Long to A.P.[5] In that call, long instructed A.P. not to talk to any detectives.

---

[5] After the recording of the first call was played for the jury, the district court instructed the jury as follows:

4

Long told A.P., "Don't answer their questions, none of them. Do you understand me?" A.P. responded, "Okay." There are several apparent references to the alleged lewd conduct victim in this conversation and Long told A.P. not to discuss the events of a particular night, describing some of the events of that night and later telling A.P. "I'm just really glad you were there." A.P. responded, "So, yeah--I will do whatever it takes, okay?" Later in the conversation, Long described some of the events that apparently occurred on the day of the alleged lewd conduct and A.P. said, "I don't recall that." She later said, "I can't say what I need to say. I'm sorry."

During the third recorded call which occurred on October 5, 2021, Long told A.P. to go to his parents' house, that he wanted her to be a witness for him and instructed her: "You need to fill in the gaps, I can't talk about it on the phone." He closed this conversation by saying "It needs to happen. Okay?" The fourth call was made by Long to A.P. on October 8, 2021, at 2:27 p.m. In that call, Long instructed A.P. that he had been charged but did not disclose the nature of the charge. Long told A.P. to go to his parents' house and that it was "super important" that she do so. He again instructed A.P. not to talk with detectives and that she was a "defense witness, not a prosecutor's witness." Long told A.P. not to talk to his father on the phone but to go to his house in person. The fifth call, again from Long to A.P., was made on October 8, 2021, at 5:42 p.m. after A.P. had gone to Long's parents' home and discussed the case with them. Long and A.P. discussed that A.P did not recall being present on the date the alleged lewd conduct with a minor occurred. Long suggested that A.P might not recall being there because she was intoxicated. She told him that she could not have been there because she took a friend to rehab and then went to work. When A.P said she went to work early, Long responded that she always went to work late. At one point, Long told A.P., "You're not f***ing listening to me at all" and that she was

---

Ladies and gentlemen of the jury, I am going to read you a jury instruction with respect to the last phone call and the next phone call.

Evidence has been introduced for the purpose of showing that [Long] committed acts other than that for which [Long] is on trial. Such evidence, if believed, is not to be considered by you to prove [Long's] character or that [Long] has a disposition to commit crimes. Such evidence may be considered by you only for the limited purpose of proving [Long's] motive, intent, plan, knowledge, absence of mistake, and/or lack of accident.

The district court repeated this instruction before recordings of each of the remaining 2021 calls were played for the jury. A similar jury instruction was given as a post-proof instruction.

5

"negating" everything he was saying.  The sixth call was on October 8, 2021, at 5:57 p.m. from Long to his father.  In that call, Long told his father that A.P. did not remember anything.

Recordings of the two 2022 calls were then played for the jury in the State's case-in-chief. Those calls were both made from Long to A.P. on April 2, 2022--three days before Long's trial in the first case was to commence.  In the first call, A.P. admitted to Long that she had spoken to the prosecutor and that A.P. had told Long that she was not present on the date when the lewd conduct was alleged to have occurred.  A.P. related that the prosecutor told A.P. she would not be called by the State as a witness.  Long told A.P.:

> This is something we can talk about when I get out.  If you ever are in a situation where you're in trouble or somebody else that you love is in trouble, you're supposed to remember what the attorneys always tell you.  Don't ever talk to the police and don't ever--.

Long then told A.P. that he intended to call her as a witness and ask about whether she recalled having "problems" with her memory.  She responded that her answer would be "no."  Long then tried to convince A.P. that she had memory issues by citing examples and accusing her of being intoxicated.  Long again told A.P. not to talk to the police or prosecutors.  In the second call,  Long informed A.P. that they (the defense) were going to call her as a witness and impeach her memory.

The State was required to prove, through the 2022 phone calls, that Long willfully influenced, impeded, deterred, and/or prevented A.P. (who may have been called as a witness or who Long believed would be called as a witness) from testifying freely, fully, and truthfully at a criminal proceeding.  The 2021 phone calls were relevant to prove Long's motive and intent to persuade A.P not to cooperate with the police, to testify that she was present when the alleged lewd conduct occurred, and to convince her that her memory was faulty.  The 2021 calls began with Long's efforts trying to convince A.P. to refuse to talk to the police or prosecutors and evolved into persuading her to testify that she was present when the events (forming the basis of the lewd conduct with a minor charge) allegedly occurred and trying to convince A.P. that she was present, and accusing her of having a poor memory and being an alcoholic which would explain her memory lapses. The 2022 calls involved disparaging A.P. for speaking to the prosecutor, getting her to agree not to speak with the police or prosecutors again, telling her that she should get up and leave if they "trick" her, and threatening to call her as a witness to "impeach her memory" which would "be kind of embarrassing."  Because the 2021 calls were relevant to prove motive

and intent, the probative value of the calls was not entirely dependent upon their tendency to demonstrate Long's propensity to engage in intimidating a witness. Long has failed to show that the district court abused its discretion when it determined that the 2021 phone calls were relevant to show his motive or intent to intimidate, impede, influence, or prevent the attendance of a witness.

The second part of an analysis of the admissibility of evidence under I.R.E. 404(b) involves a determination under I.R.E 403 regarding whether the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Pepcorn*, 152 Idaho at 689, 273 P.3d at 1282. Long argues that the 2021 phone calls had little, if any, probative value to prove the charge of intimidating a witness in this case and that they were extremely prejudicial because they invited the jury to find him guilty based upon having previously committed the same conduct with the same witness involving the same underlying criminal case. The State argues that, in order for the jury to understand the implications of the 2022 phone calls, it was important for the jury to have the context of the 2021 calls. We agree that the 2021 calls set the stage for and explained the significance of the 2022 calls. The content of the 2021 calls was of significant probative value to prove motive and intent regarding the 2022 calls. As to prejudice, the district court instructed the jury before or after each recorded 2021 call was played that the 2021 calls were not to be considered to prove Long's character or that he has a disposition to commit crimes and that the calls could only be considered for the limited purpose of proving his motive, intent, plan, knowledge, absence of mistake, and/or lack of accident. A similar instruction was given as part of the post-proof instructions. We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Long has failed to show that the district court abused its discretion when it determined that the probative value of the 2021 calls was not substantially outweighed by the danger of unfair prejudice.

## B.     Nature of Prior Offense and Long's Acquittal

Long also argues that the district court erred by allowing the State to introduce evidence that the criminal proceeding associated with the intimidating a witness charge was lewd conduct with a minor and further erred by not instructing the jury that Long was acquitted of that charge. Long argued before the district court that admission of the 2021 calls would be unfairly prejudicial

because the jury would be alerted that Long had been charged with a sexual offense involving a minor. It appears that, while the charge of lewd conduct is not mentioned in the calls, the jury might have drawn such an inference or at least been left to wonder if that were the case. In its order regarding the admissibility of the State's I.R.E. 404(b) evidence, the district court ruled that the State would be allowed to present evidence regarding the nature of the criminal proceeding that Long was facing at the time of the April 2022 calls because "[t]he fact [Long] was charged with Lewd Conduct with a Minor under Sixteen is relevant because it is that charge to which the alleged witness intimidation was aimed." On the morning of the first day of trial, the following colloquy occurred between the district court and counsel for both parties:

[COURT]:        All right. Is there anything else that we need to take up outside the presence of the jury at this time?

[STATE]:        Yes, Your Honor. I think there are two issues that we might want to take up and get a firm answer on before the trial actually starts.

[COURT]:        Okay.

[STATE]:        The first is whether or not the State can bring up that--that [Long] was charged with lewd and lascivious conduct with a child. I know that in your 404(b) [sic] motion, you stated that the fact that [Long] was charged with lewd conduct with a minor under 16 is relevant because it is the charge to which the alleged witness intimidation was aimed.

So I read that as the State is allowed to bring it up. I would not get into the actual facts of that case or the facts of the allegation, simply the charge and the nature of the charge. But I wanted to confirm with the Court and I know that defense counsel has an objection to that, so I thought it would be--it would make sense to sort that out now.

[COURT]:        Okay. [Defense counsel], do you want to be heard on that request?

[DEFENSE]:        Yes, Your Honor. I've offered to stipulate that [A.P.] is-was a potential witness in a criminal proceeding. So I think that that would obviate the need for the nature of the charge to be brought up. And as such--and I continue to object to the admission of those 404(b) recordings that the Court's ruled on. They are full of references to crimes against a child. I mean, taken together and even singly, it's pretty obvious that [Long] was facing an L and L charge. I provided the State with a list of redactions I think need to be made to prevent the jury from being exposed to that information.

But since I'm stipulating--I'm offering to stipulate, I should say, that [A.P.] was a potential witness in a criminal proceeding, I think at that point, then, the only purpose to admitting information

8

about the nature of the charge would be to blacken my client's name in front of the jury, so I would ask that that not happen.

[COURT]: Okay.

[DEFENSE]: In the event, however, that the Court rules that that is admissible, then I would ask that the jury be instructed that he was found not guilty of that charge.

. . . .

[STATE]: And, Your Honor, the fact that [Long] was found not guilty, one, simply isn't relevant to the actual charge here. That isn't relevant to any defense. [Long] was taken to trial on a lewd and lascivious conduct charge. At that trial, certain evidence was allowed in, certain evidence was prevented from coming in. And the State presented the evidence that was allowed in. And at that time, the jury found that the State hadn't met its burden beyond a reasonable doubt.

Now, the State certainly is concerned that if the jury were instructed that he was acquitted, they might take that to mean that he was either proven innocent or that he was falsely accused, and that would be prejudicial to the State's case because it's simply not true.

In addition to that, it could raise concerns with the jury that the State is somehow trying to get a do-over in this case or something along those lines, which also isn't true, Your Honor. And so for those reasons, but mostly for the fact that it's simply not relevant, the State would object to the jury being instructed [Long] was acquitted.

[COURT]: All right. So what I said in my 404(b) ruling was accurately reflected from the State. The State is going to be allowed to introduce evidence that [Long] was engaged in a criminal proceeding, and they are going to ref--are able to reference the charge and the name of the victim--or the alleged victim in that case.

Otherwise, it's--it's not simply that--I appreciate the defense's willingness to stipulate to the criminal proceeding, but if you look at Instruction Number 12, [the charging instruction] as proposed, the State is also going to have to prove that it was--there was a willful influence, impeding, deterring, and/or prevention of that testimony.

And in order to be able to prove those things or even to present evidence, there has to be some context as to what that criminal proceeding was. You can't sterilize it to the point of just saying it's a criminal proceeding because there's context into whether or not there was influence.

What I will tell the State, though, is the information in that case will not come in. The--none of the witnesses may refer to it as--that it was a felony charge. The most that I'm expecting the

State to say is that there--the name of the crime as alleged on the front of the information, as well as the name and/or initials of the victim--or the alleged victim in this case. So that's the most that I'm going to allow the State to say.

With respect to the defense's request to present evidence that he was acquitted of that charge, I'm not going to let that come in. I don't think that's relevant. It has no relevance as to any case--any--any prima facie element that the State would have to prove in this case. And I'll note for the record that I'm also aware that [Long] was charged with and found guilty of intimidating a witness. The verdict on that will also not come in any more than the verdict on the first charge. The verdict on either one of those counts is simply not relevant as to the charges in this case, and neither side will be able to bring up the verdicts on either one of those charges in the prior case at issue.

So, again, the jury doesn't get to speculate as to why a previous jury may or may not have found [Long] guilty. We weren't there. We don't know what that jury decided or held, and we're not going to let this jury speculate about that. It's not relevant. And we're not going to get in sidebars as to whether he should or should not have been convicted and/or why he was or was not convicted of that second charge.

So the verdicts, again, are not relevant. They're not going to come in. Again, the State will be allowed to--to both bring up the name of the charge and the alleged victim and, frankly, the timeline so that it makes sense as to when that case--the allegations in that case and, if relevant, when it went to--when the jury trial was scheduled for that case.

So if I need to do a limiting instruction, I can do that. I haven't thought about that at this point. But if we need further limiting instructions, I'm open to that if either party wants to request that in light of that ruling, but that is going to be the ruling on that request.

In order to meet its burden, the State was required to prove:

LONG, on or between the 2nd day of April 2022, and the 4th day of April 2022, in the County of Ada, State of Idaho, did willfully attempt to influence, impede, deter, and/or prevent, by any manner, [A.P.], a person who may be/may have been called as a witness or who the defendant believed will/would be called as a witness, from testifying freely, fully, and truthfully at a criminal proceeding.

In the pretrial order regarding admissibility of I.R.E. 404(b) evidence, the district court found that the nature of the prior lewd conduct charge was relevant because it showed Long's intent to engage in, and his motive behind, the charged crime of witness intimidation. The district

10

court also determined that the probative value was not substantially outweighed by any potential prejudice against Long, finding that the State was entitled to present evidence of the underlying crime because the fact of that underlying crime is an element of the witness intimidation charge. *See State v. Baer*, 132 Idaho 416, 419, 973 P.2d 768, 771 (Ct. App. 1999) (affirming the district court's decision to allow the State to present to the jury that the defendant had allegedly intimidated the witness to prevent testimony at a trial for sexual abuse of a minor).

On appeal, Long argues that the district court erred by allowing the State to present to the jury the title of the previous charge (lewd and lascivious conduct) that the intimidation of a witness charge stemmed from because it was unfairly prejudicial. Thus, Long challenges the admission of this evidence under I.R.E. 403. Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to the party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis. *Baer*, 132 Idaho at 419, 973 P.2d at 771. The district court, by admitting the title of the lewd and lascivious conduct charge but not any evidence of that charge, recognized the issue as one of discretion. Additionally, the record reflects that the district court exercised reason in reaching its decision to allow only the fact of Long's charge before the jury and the alleged victim's initials. Thus, we are left to determine whether the district court acted within the bounds of its discretion and consistently with legal standards applicable in the instant case.

The district court allowed the title of Long's charged offense--lewd and lascivious conduct with a minor--before the jury. As explained by the district court, that evidence was relevant. Long has failed to demonstrate that the probative value of that evidence was substantially outweighed by the danger of unfair prejudice. Therefore, Long has failed to show the district court abused its discretion when it allowed the jury to be presented with the name of the prior charge to which the witness intimidation charge is related.

The district court also considered whether the jury had to be instructed that Long was acquitted of the lewd and lascivious conduct charge. The district court concluded that the acquittal was not relevant. Based on the lack of relevance, the district court also concluded that the jury did not need to be instructed about Long's prior acquittal. We agree.

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). Because this Court

concludes no error occurred in denying admission of the prior acquittal, this Court also concludes there was no error in the denial of a proposed jury instruction to inform the jury of the prior acquittal.

This Court has previously ruled that whether the charges against a defendant should be admitted as evidence and whether the disposition stemming from those charges should be admitted as evidence are two separate inquiries under I.R.E. 404(b). *See State v. Kremer*, 144 Idaho 286, 293, 160 P.3d 443, 450 (Ct. App. 2007). In *Kremer*, this Court held that the district court did not err in admitting evidence of prior bad acts under I.R.E. 404(b) and, at the same time, not admitting evidence of the disposition of criminal charges stemming from the prior bad acts. As was the case in *Kremer*, here the district court separately considered the relevance of the prior criminal charge and of the acquittal following trial on that charge.

Whether a criminal proceeding is pending is irrelevant to a defendant's intent to intimidate a witness. *State v. Curry*, 153 Idaho 394, 398, 283 P.3d 141, 145 (Ct. App. 2012). In *Curry*, this Court stated that, "if a defendant believes a witness may testify in the future at a criminal proceeding" he or she "believes may ensue and intimidates that witness," his or her "guilt does not turn on whether a criminal proceeding has already been formally initiated." *Id*. Here, the title of the prior act committed was relevant to provide context as to why Long would have been motivated to intimidate the witness. However, because the alleged witness intimidation occurred before the trial and eventual acquittal, the district court found the context of the earlier charge was relevant because it supported any possible belief Long held that he may be charged with lewd and lascivious conduct. As in *Curry*, the State sought to show that, at the time of the alleged witness intimidation, Long believed he would be found guilty of lewd and lascivious conduct with a minor. The eventual acquittal was irrelevant to showing whether Long was or was not motivated to intimidate the witness before he went to trial for the lewd and lascivious conduct charge. Further supporting this conclusion, during trial, the State argued that if the jury was instructed that Long had been acquitted, the jury may mistakenly believe he was proven innocent or falsely accused. The State contended that this would be prejudicial to its case because neither was true.

Long relies on, and asks this Court to consider, the legal analysis provided in the Colorado Supreme Court case of *Kinney v. People*, 187 P.3d 548 (Colo. 2008). The Court in *Kinney* concluded that, "although outcomes have varied, the majority rule among states and federal circuits

12

is that a trial court should make a case-by-case decision as to whether informing the jury of the acquittal is required, with that decision reviewed by appellate courts for an abuse of discretion." *Id.* at 556. We agree that such decisions should be reviewed for an abuse of discretion on a case-by-case basis.

In this case, the district court did not abuse its discretion in allowing the State to identify the name of the prior charge while also deciding not to admit evidence or instruct the jury that Long had been acquitted of the prior charge. As the Colorado Supreme Court identified, the trial court makes a case-by-case decision as to whether informing the jury of the acquittal is required. *Id.* Here, because of the nature of a charge for intimidating a witness, Long's acquittal of the prior charge was not relevant.

## C.     **Prosecutorial Misconduct**

Long contends that the State committed prosecutorial misconduct during closing argument when the prosecutor repeatedly told the jury, over the objection of Long, about the prosecutor's own personal experiences and beliefs in talking to witnesses. Specifically, the following exchange occurred during the rebuttal closing argument regarding the 2022 calls between Long and A.P.:

| | |
|---|---|
| [STATE]: | So first, [Long] said over and over not to speak to prosecutors and other law enforcement, keeping in mind that these calls were made three days before trial. So this is important because if she won't talk to prosecutors, they can't call her as a witness. If I'm prosecuting a case, I can't call a witness who won't talk to me. I can't trust that that witness is going to tell the truth. I can't trust that they're going to answer my questions. How--how could I possibly in good faith call a witness who won't talk to me? |
| | And so--so, yes, that's extremely important. If he tells her not to talk to cops and prosecutors, that's very much going to affect the case against him. And, further, you know, yes, she doesn't have a duty. She's not legally required to speak to prosecutors and law enforcement, but that doesn't mean he can tell her not to do that. I have--I have witnesses asking me all the time-- |
| [DEFENSE]: | Judge, [the prosecutor is] not here to testify. |
| [STATE]: | This isn't testimony, Your Honor. This is-- |
| [DEFENSE]: | Talking about his-- |
| [STATE]: | --the purpose of-- |
| [DEFENSE]: | --war stories of his experience is testifying, Your Honor. |
| [COURT]: | I'm going to ask--I'm going to overrule the objection. I'm going to ask the State to be brief. |
| [STATE]: | I will be brief. |

13

--whether or not they can talk to defense investigators. And the answer for me is always, I have no opinion on whether or not you talk to defense investigators. You absolutely can. You have nothing to hide. It would be unthinkable to tell a witness not to speak--

[DEFENSE]: Your Honor, again, I'm going to object to the impropriety of this argument. This is totally improper.

[COURT]: [Defense counsel], [prosecutor], please approach. I'll address it on sidebar.

(A bench conference was held.)

I'm going to overrule the objection.

[STATE]: Thank you, Your Honor, but I will move on.

I think the point's been made. She doesn't have to talk to police and prosecutors, but he absolutely cannot influence her to not talk to police and prosecutors. And that's what he did. That's clearly what he was trying to do with all of his statements there. That is illegal. You cannot do that.

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* When there has been a contemporaneous objection, we determine factually if there was prosecutorial misconduct and then determine whether the error was harmless. *Id.*; *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). Where a criminal defendant shows a reversible error based on a contemporaneously objected-to constitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict. *State v. Johnson*, 163 Idaho 412, 421, 414 P.3d 234, 243 (2018). A conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Baker*, 161 Idaho 289, 299, 385 P.3d 467, 477 (Ct. App. 2016).

The first step in a prosecutorial misconduct analysis is to determine whether the conduct rises to the level of prosecutorial misconduct. "The purpose of the prosecutor's closing argument, not unlike that of the defense in this regard, is to enlighten the jury and to help the jurors remember and interpret the evidence." *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Although a closing argument may not misrepresent or mischaracterize the evidence, "[b]oth sides have traditionally been afforded considerable latitude in closing argument to the jury

14

and are entitled to discuss fully, *from their respective standpoints*, the evidence and the inferences to be drawn therefrom." *State v. Sheahan,* 139 Idaho 267, 280, 77 P.3d 956, 969 (2003) (emphasis added). Here, the proecutor's argument was a brief reference to his own experience as a way to illustrate to the jury the significance of Long's attempts to keep A.P. from testifying. Long has failed to show that the State committed prosecutorial misconduct in making the challenged statements.

**D.     Cumulative Error**

Long also contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors (harmless in and of themselves) may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id*. Long has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine.

## III.

## CONCLUSION

Long has failed to show that the district court erred by admitting evidence of the 2021 phone calls pursuant to I.R.E. 404(b). Long has failed to show that the district court erred by allowing the State to present evidence of the nature of the prior charge against Long or by not instructing the jury that he had been acquitted. Additionally, Long has failed to show that the State committed prosecutorial misconduct. Finally, Long has failed to show that any irregularities in his trial, either singularly or cumulatively, constitute reversible error. Accordingly, Long's judgment of conviction for intimidating, impeding, influencing, or preventing attendance of a witness is affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.